STATE of Minnesota ex rel. Gregory J. McMASTER, Petitioner, Appellant,

v.

Jack YOUNG, Minnesota Commissioner of Corrections, et al., Respondents.

No. C7-91-895.

Court of Appeals of Minnesota.

Oct. 29, 1991.

Review Denied Dec. 13, 1991.

Heidi H. Crissey, Stillwater, John R. Wylde, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., M. Jacqueline Regis, Special Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY, JJ.

## OPINION

DAVIES, Judge.

Appellant challenges the denial of a petition for habeas corpus. Habeas corpus was denied on the basis that there is no liberty interest in access to prison rehabilitation programs nor in custody status classifications and that prison officials were not arbitrary and capricious in applying prison rules and regulations. We affirm.

### FACTS

Appellant is incarcerated at Oak Park Heights as a result of a 1978 guilty plea to the first-degree murder of a deputy sheriff in Roseau. Appellant has been classified as a "maximum" security risk under the Inmate Custody Status Classification System almost continuously and has been at Oak Park Heights since 1982. In October 1989, appellant's classification would have been changed to "close" security, except for a reclassification back to "maximum" security under the Chief Executive Officer special reclassification option, by which the warden may reclassify a prisoner on any basis as long as the reason(s) are set out in writing. The only reason noted on the reclassification document was the "interest" Canada has expressed in extraditing appellant for trial on three murder charges pending in Canada.

Appellant wishes to pursue a college degree through the Insight program at Stillwater. As long as he is classified as "maximum" security, Oak Park Heights will not consider him for transfer to Stillwater. Appellant challenges his classification as "maximum" security based on the Canadian "interest," challenges his lack of access to the Insight education and rehabilitation program, and alleges that prison officials have applied their rules and regulations in an arbitrary and capricious manner.

### ISSUES

1. Did the trial court err in holding that appellant has no liberty interest, under the due process clauses of the United States and Minnesota constitutions nor under Minnesota statutes, in access to rehabilitative and other programs within the Minnesota prison system?

2. Did the trial court err in concluding that appellant's custody classification is

valid whether or not the warden used a foreign government's expression of "interest" in a future prosecution of appellant in determining that classification?

3. Did the trial court err in finding that respondents did not act in an arbitrary and capricious manner in applying prison rules and regulations to appellant?

### ANALYSIS

1. Appellant challenges the trial court's determination that neither state nor federal law provides him a liberty interest in rehabilitative programs. The United States Supreme Court has stated that:

Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States.

*Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The United States Supreme Court has said that no due process rights attach to prisoner classification nor to eligibility for rehabilitative programs in the federal system. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). Appellant argues, however, that he has a state liberty interest in rehabilitative programs created by the policy statement of the legislature in Minn.Stat. § 364.01 (1990), the powers and duties given to the Commissioner under Minn.Stat. § 241.01 (1990), and the description of voluntary programs to be provided by the Commissioner under Minn.Stat. § 244.03 (1990).

A state created liberty interest arises in situations in which the state has placed substantive limitations on the exercise of official discretion.

\* \* \* \* \* \*

In determining whether state statutes, regulations, or policy statements place substantive limitations on the ability of penitentiary officials \* \* \* there must exist in the statute, regulation, or policy statement particularized substantive standards or criteria that guide the exercise of discretion by penitentiary officials.

*Clark v. Brewer,* 776 F.2d 226, 230 (8th Cir.1985) (citations omitted).

Chapter 364 does not deal with rehabilitative programs within prisons. It provides a statutory process for use by someone convicted of a crime to reduce the burden of that conviction when applying for public employment. Even in that context, "Chapter 364 does not relate to an underlying liberty interest protected by the fourteenth amendment." *Vruno v. Schwarzwalder,* 600 F.2d 124, 131 (8th Cir. 1979).

 Minn.Stat. § 241.01, subd. 3a(a), is part of a statute creating the Department of Corrections and identifying the powers and duties of its Commissioner. Among the duties listed is

(a) To accept persons committed to the commissioner by the courts of this state for care, custody, and rehabilitation.

Minn.Stat. § 241.01, subd. 3a(a).

Minn.Stat. § 244.03 provides that:

The commissioner shall provide appropriate mental health programs and vocational and educational programs with employment-related goals for inmates who desire to voluntarily participate in such programs. The selection, design and implementation of programs under this section shall be the sole responsibility of the commissioner.

Neither section 241.01, subd. 3a(a), nor section 244.03 is a mandate to provide any prisoner with any particular program, nor does either provide "particularized substantive standards or criteria that guide the exercise of discretion by penitentiary officials." *Clark,* 776 F.2d at 230. The trial court did not err in holding that appellant has no liberty interest in access to rehabilitative and other programs within the Minnesota prison system.

2. Appellant is presently classified as "maximum" security under the Chief Executive Officer special reclassification option. Appellant challenges the warden's using, as a basis for establishing his custody classification, the Canadian "interest" in extraditing him for trial on three murder charges.

■ The essence of this challenge is that, although the Canadian "interest" is not a "detainer," it is being treated in some ways as if it were. If it were a "detainer," uniform laws enacted by almost all states and the federal government provide a means to have the charge adjudicated expeditiously or dismissed. *See* Interstate Agreement on Detainers Act, 18 U.S.C.A.App., pp. 585–91 (1985); *United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 1838–39, 56 L.Ed.2d 329 (1978); Minn. Stat. § 629.294 (1990).

It would appear that McMaster is unfortunately, but lawfully, subject to the same sorts of disadvantages that led to the nearly uniform passage of the Interstate Agreement on Detainers Act. In this case, however, the United States and Canada have a treaty on extradition, and the Canadian "interest" in extradition is controlled by that treaty rather than by the Interstate Agreement on Detainers Act or the Uniform Mandatory Disposition of Detainers Act.

Article 7 of the Treaty on Extradition Between the U.S.A. and Canada, Mar. 22, 1976, 27 U.S.T. 983, T.I.A.S. No. 8237, provides:

> When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

There is no claim that the requirements of the treaty have not been met. There is also no challenge regarding the existence or propriety of the reclassification provisions used by the warden. While the Canadian "interest" appears to be the primary basis for continuing appellant in a "maximum" security classification, all the evidence indicates that officials in Minnesota have gone to great lengths to facilitate appellant's expeditious extradition to Canada, even shepherding a bill through the state legislature to make it more practical for Minnesota to extradite someone in appellant's situation.[1]

As to the fact that appellant's custody status effectively prevents his transfer to another prison, the Commissioner of Corrections is specifically given authority "[t]o determine the place of confinement of committed persons in a correctional facility," Minn.Stat. § 241.01, subd. 3a(b), and, according to the United States Supreme Court, there is no liberty interest affected by a prisoner's transfer to, and, by implication, retention in, an institution with more severe rules. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

The trial court did not err in holding that appellant's custody status determination is valid regardless of any dependence that determination may have on the Canadian "interest" and any effect it may have on appellant's ability to be considered for transfer to a less secure facility.

3. Appellant challenges the trial court's finding that his custody classification is not arbitrary and capricious, but is pursuant to Department of Corrections policies.

■ Findings of fact will not be set aside unless they are clearly erroneous. Minn. R.Civ.P. 52.01. Where the trial court's findings of fact are "reasonably supported by the evidence, they are not clearly erroneous and must be affirmed." *Hilton v. Nelsen*, 283 N.W.2d 877, 881 (Minn.1979).

An agency decision may be arbitrary or capricious if the decision is based on whim or is devoid of articulated reasons. *Mammenga v. Department of Human Serv.*, 442 N.W.2d 786, 789 (Minn.1989).

■ Appellant's custody status was determined under the warden's option provided by the Department of Corrections Inmate Custody Status Classification System. Under that provision, the classification must be selected in writing and the writing must set forth the reasons for the classification chosen. The classification and the reasons for it, along with all other pertinent information, must be reviewed by the Classification Review Committee and a rec-

[1] *See* Minn.Stat. § 243.515 (1985).

ommendation made; a final decision is made by the warden. This procedure was followed.

The trial court did not err in finding that appellant's custody classification is not arbitrary or capricious but is pursuant to Department of Corrections policies and procedures.

■ 4. Respondent challenges the inclusion of various documents in appellant's appendix. The challenged documents were either trial exhibits, quoted in appellant's trial memorandum or attached to appellant's trial memorandum. It was not necessary to exclude them from review.

## DECISION

Appellant has no liberty interest in his custody status classification nor in access to rehabilitative programs in the Minnesota prison system. Respondents were not arbitrary and capricious in their application of prison rules and regulations to appellant.

Affirmed.