*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1544**

James David McBroom, petitioner,
Appellant,

vs.

Minnesota Correctional Facility - Oak Park Heights, et al.,
Respondents.

**Filed January 11, 2016
Affirmed
Cleary, Chief Judge**

Washington County District Court
File No. 82-CV-15-353

James David McBroom, Stillwater, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Kelly S. Kemp, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Appellant James David McBroom seeks review of the district court's July 23, 2015 order denying him relief and dismissing his petition for a writ of habeas corpus. In that petition, McBroom challenged the imposition of 105 days of extended incarceration for violation of prison disciplinary rules prohibiting inmates from sending mail containing threats to others. McBroom argues that because the mail was addressed to various media

organizations and contained fictional pieces of poetry, the Minnesota Department of Corrections (DOC) violated federal prison regulations and his constitutional rights when it inspected his mail and disciplined him for its contents. We reject McBroom's arguments and affirm the district court's order.

## FACTS

In 2008, McBroom was convicted of third-degree criminal sexual conduct and sentenced to 140 months in prison, with ten years of conditional release. *State v. McBroom*, No. A08-2272, 2009 WL 4251080, at *2 (Minn. App. Dec. 1, 2009), *review denied* (Minn. Jan. 19, 2010). He is currently an inmate at the Minnesota Correctional Facility at Oak Park Heights, with an anticipated release date of March 21, 2016.

Under DOC policy, outgoing offender mail may be reviewed randomly by prison staff for security reasons. DOC Division Directive 302.020 (defining "inspection" as including the "opening and visual checking of all incoming/outgoing mail (except for special/legal mail as defined below) for unallowable items and contraband"). The only outgoing mail not subject to random inspection includes legal mail, which is defined as correspondence to a court or attorney, and special mail, which is correspondence to designated state and federal officials. *Id.* Under directive 302.020, McBroom's letters to media organizations were subject to random search and review by DOC staff.[1]

---

[1] As will be discussed, DOC policy differs in this respect from federal prison regulations, which define "special mail" as including correspondence sent to certain news organizations that may be sealed by the inmate and is not subject to inspection. 28 C.F.R. §§ 540.2, 540.18 (2015).

2

On January 23, 2015, McBroom filed a petition for a writ of habeas corpus, challenging DOC's decisions to impose 105 days of extended incarceration for four separate violations of prison disciplinary rules involving outgoing mail that he attempted to send to various media organizations.[2]

The first violation occurred on or about June 13, 2013, when McBroom submitted four unsealed envelopes to the DOC mailroom. The envelopes were addressed to several media outlets or organizations, and were subject to random search and review. Mailroom staff found a six-page poem that contained threats of physical and sexual violence against a female "troll." McBroom was charged with violating prison disciplinary rules that prohibit threatening others and disorderly conduct.

At an evidentiary hearing, a DOC investigator testified that he had determined that McBroom's statement or poem was threatening. The prosecutor noted that there was a correlation between the object of the poem and the victim of McBroom's third-degree criminal-sexual-conduct conviction. In the presentence investigation report from that criminal file, McBroom referred to his victim as "troll." Based on the evidence and testimony, the hearing officer recognized other similarities between McBroom's poem and

---

[2] McBroom also received approximately 330 days of segregation for these four violations. His habeas petition addressed and challenged only the extended incarceration imposed, and the district court's order focuses on that disciplinary sanction. For the first time on appeal, McBroom also mentions the days he spent in segregation or "solitary confinement," claiming that this sanction was imposed in error and was not harmless. Inmates have no protected liberty interest in particular housing conditions, including no right to be in the general population. *See Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 2301 (1995) (holding that inmate's "discipline in segregated confinement did not present the type of atypical, significant deprivation" so as to create a liberty interest). In any event, McBroom was afforded due process before he was disciplined and given periods of segregation.

statements he made during his criminal proceedings, including references to the victim's trial testimony, McBroom's offers to take a lie-detector test, and the lack of DNA evidence. The poem describes the "troll" being hunted down, assaulted, and killed without evidence of a body and with no DNA evidence, "so don't hope for a conviction, against a law abiding citizen named Broom." McBroom was disciplined and received 15 days of extended incarceration time for threatening others, and the decision was affirmed by the warden.

The second violation occurred on or about March 14, 2014, when McBroom attempted to mail 21 envelopes to various media organizations. All of the envelopes had the words "content contains murder and oral sex all fiction of course," printed next to the address. Inside the envelopes was a poem that contained threats of murder directed at female "unicorns" working in the DOC mailroom. A member of the mailroom staff testified at McBroom's disciplinary hearing that she recognized some of the references to unicorns were intended to refer to female mailroom staff and that she felt threatened by the contents of the poem. Following a disciplinary hearing, the hearing officer imposed 30 days of extended incarceration on McBroom for threatening others. On appeal, the warden affirmed the decision.

The third violation occurred on or about April 21, 2014, when McBroom attempted to mail 26 envelopes to media organizations, marked with the words "Disclaimer enclosed so I could [care less] if anyone finds it offensive, [a]busive, obscene, or insulting." Written above the address were the words "Special/Privileged Mail Per: 28 C.F.R. § 540.20(a)." Inside each envelope was a poem that contained derogatory, sexual descriptions of mailroom staff. Following a discipline hearing at which a member of the mailroom staff

4

testified, the hearing officer concluded that the poem was clearly directed at staff and that it was abusive, harassing, and sexually explicit. The officer assigned McBroom 30 days of extended incarceration time. On appeal, the warden upheld the decision.

The fourth violation occurred on or about April 28, 2014, when McBroom attempted to mail 20 envelopes to media organizations, marked as "Special Mail Per: 28 C.F.R. § 540.20(a)" and "(A Work of Pure Fiction Enclosed!)." The poem referred to a "fictional female troll," threatened the troll with slaughter and decapitation, and urged mailroom staff to commit suicide. McBroom waived a hearing on this offense, and received 30 days of extended incarceration time for threatening others.

### D E C I S I O N

A writ of habeas corpus is a statutory remedy that allows an inmate to petition for "relief from imprisonment or restraint." Minn. Stat. § 589.01 (2014). The burden is on the petitioner to show the illegality of his detention. *Breeding v. Swenson*, 240 Minn. 93, 97, 60 N.W.2d 4, 7 (1953). When the relevant facts are undisputed, this court will apply a de novo standard of review on appeal from the denial of a petition for a writ of habeas corpus. *State ex rel. Guth v. Fabian*, 716 N.W.2d 23, 26 (Minn. App. 2006), *review denied* (Minn. Aug. 15, 2006).

### I.

Many of McBroom's arguments focus on federal regulations that define "special mail" as including outgoing mail addressed to the media. *See* 28 C.F.R. §§ 500.1, 540.2, 540.18, 540.20 (2015). McBroom insists that DOC staff acted improperly and violated his

5

rights because they did not follow federal regulations. The district court properly concluded that the federal regulations do not apply to DOC and its staff.

Prison officials are vested with a certain amount of discretion with respect to the custody and control of their inmates. *See Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26, 97 S. Ct. 2532, 2537-38 (1977). "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," given the needs and realities of the penal institution. *Id.* at 125, 97 S. Ct. at 2537 (quotations omitted). But an inmate retains constitutional protections and rights "'that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* at 125, 97 S. Ct. at 2538 (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974)); *see State v. Cuypers*, 481 N.W.2d 553, 556 (Minn. 1992) (stating that "[i]nmates in Minnesota jails and prisons . . . retain those constitutional rights that are not inconsistent with their status as prisoners and that do not interfere with legitimate concerns for security and safety within the institution").

Under 28 C.F.R. §§ 540.2, 540.18, McBroom's correspondence to media organizations likely would have been classified as special or privileged, and not subject to inspection and seizure. These federal prison regulations, however, govern the management and control of federal prisons. *See* 18 U.S.C. § 4042(a)(1) (2014) ("The Bureau of Prisons, under the direction of the Attorney General, shall . . . have charge of the management and regulation of all Federal penal and correctional institutions[.]"). McBroom is incarcerated in a state prison that is under the control of the commissioner of corrections and is governed by state prison policies. Minn. Stat. § 241.01, subds. 1, 3a (2014).

6

McBroom does not claim that DOC staff violated state prison policies and regulations, which specifically allow DOC staff to read outgoing offender mail addressed to the media for security reasons. *See* DOC Division Directive 302.020 ("Mail may be read if there is a justifiable belief that contents constitute a risk to safety and security of the facility, specific individuals, the public, or when staff have reason to believe that the offender or sender is involved in criminal activity."). McBroom's claim that he is entitled to relief because DOC violated federal regulations that apply to federal prisons is misplaced and was properly rejected by the district court.

**II.**

McBroom argues that the DOC policies, which allow DOC to randomly inspect outgoing mail addressed to the media, violate his First Amendment rights.

There is a split among federal circuit courts and among states regarding whether prisoners have the right to send letters to the media unopened and unread by prison officials. D. Temko, *Prisoners and the Press: The First Amendment Antidote to Civil Death After PLRA*, 49 Cal. W. L. Rev. 195, 195-96, 213-15 (2013). The split involves whether mail addressed to the media is classified as general mail, which is subject to inspection for security concerns, or privileged mail, which generally cannot be inspected and read by prison officials because it abridges the prisoner's constitutional right to communicate with entities and persons who facilitate access to the courts. *Id.* at 196.

The Eighth Circuit has ruled that state prison regulations allowing officials to inspect mail addressed to the media for security reasons do not violate First Amendment rights. *Smith v. Delo*, 995 F.2d 827 (8th Cir. 1993). In *Smith*, the inmate challenged a

Missouri prison policy that required outgoing mail addressed to the media to be sent to the prison mailroom unsealed so that it could be inspected. *Id.* at 829. After examining the Supreme Court's decisions, including *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874 (1989), *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987), and *Procunier v. Martinez*, 416 U.S. 396, 94 S. Ct. 1800 (1974), the Eighth Circuit concluded that the Missouri regulation was rationally related to the legitimate interest of prison officials in preventing and discovering mail containing contraband, threats, evidence of escape plans, and other criminal activity. *Smith*, 995 F.2d at 832. The Eighth Circuit further emphasized that the Missouri regulation did not prohibit an inmate from communicating permissible messages, such as grievances regarding prison conditions that could be unflattering to the prison and its officials, and that there was no less restrictive manner by which officials could vindicate their interests in prison security and public safety. *Id.* The Eighth Circuit upheld the Missouri prison regulation, which appears similar to the DOC policy regarding outgoing mail addressed to the media that is challenged by McBroom here. Under *Smith*, the DOC policy that allows prison staff to randomly inspect and review outgoing mail to the media for threats or other criminal activity does not violate the First Amendment.

Moreover, the DOC policy is unlike the California prison regulation struck down by the Supreme Court in *Martinez*, which was unconstitutional because it allowed officials to censor unflattering statements, complaints, and grievances concerning prison conditions. 416 U.S. at 415, 94 S. Ct. at 1812. The DOC policy challenged by McBroom is not a blanket prohibition against sending mail to the media and it does not prohibit an inmate from making unflattering comments to the media about prison conditions. Rather, the DOC

8

policy prohibits mail that constitutes a safety or security risk or that contains threats of physical harm or other criminal activity. DOC Division Directive 302.020. McBroom was disciplined for attempting to send mail or material that included written threats and vulgar slurs directed at his victim and at prison mailroom staff. Showing disrespect towards prison staff is contrary to legitimate penal interests of maintaining control and discipline in a prison setting. *See Goff v. Dailey*, 991 F.2d 1437, 1439 (8th Cir. 1993) (noting that "a prison has a legitimate penological interest in punishing inmates for mocking and challenging correctional officers by making crude personal statements about them in a recreation room full of other inmates"). Prison officials may discipline inmates for threatening prison staff for doing their jobs and need not tolerate open insubordination of their authority.

McBroom relies extensively on a federal case from the District of Colorado, which held that prison staff could not discipline an inmate merely because he had submitted a writing that had been published under a byline, in violation of a federal prison regulation, 28 C.F.R. § 540.20(b). *Jordan v. Pugh*, 504 F. Supp. 2d 1109 (D. Colo. 2007). As noted earlier, there is a split among jurisdictions regarding whether outgoing mail to media organizations can be inspected or whether it is privileged. *Jordan* involved federal regulations that classify outgoing mail addressed to the media as special mail and not subject to inspection; those regulations do not apply to McBroom because he is under the custody of DOC. In addition, the court in *Jordan* concluded that the federal byline regulation was unconstitutional partly because there was no logical connection between the blanket restriction on outgoing news media correspondence and prison security. 504 F.

9

Supp. 2d at 1125. The DOC policy at issue here does not impose a blanket restriction on outgoing mail, and authorizes random inspections and inspections when "there is a justifiable belief that contents constitute a risk to safety and security." DOC Division Directive 302.020.

In this case, McBroom was not disciplined for trying to have a poem published, and the DOC policies and disciplinary rules he violated do not preclude such publication. McBroom was disciplined for making threats against his victim and staff. An inmate has no constitutional right to make threats against staff or to publish threats against his victim. *See Leonard v. Nix*, 55 F.3d 370, 373-75 (8th Cir. 1995) (drawing distinction "in the prison context between permissible and constitutionally protected 'unflattering' remarks about prison staff in [outgoing correspondence] and impermissible written abusive language that is directed not to the addressee but at and to the warden").

The DOC policy is not a blanket restriction on outgoing mail to the media and does not authorize disciplining an inmate for attempting to send mail that criticizes prison officials or prison conditions. The district court did not err when it rejected McBroom's claim that the DOC policy regarding outgoing mail addressed to the media violated his First Amendment rights.

**III.**

While not a fully developed argument, McBroom suggests that he should not be disciplined because his poems are not threats, but fiction and labeled as such. An inmate's term of imprisonment may be extended for violating prison disciplinary rules. Minn. Stat. §§ 241.01, subd. 3a(b), 244.05, subd. 1b (2014). A hearing officer must find by a

preponderance of the evidence that the inmate violated a prison disciplinary rule before imposing extended incarceration. *See Carrillo v. Fabian*, 701 N.W.2d 763, 777 (Minn. 2005).

McBroom has not shown that he was improperly disciplined because his poems were fictional; rather, he was properly disciplined for attempting to send unallowable mail to media outlets that contained statements threatening others. The evidence presented to the hearing officers included testimony from a DOC investigator and from mailroom staff who recognized the poems as referring to and threatening McBroom's victim and staff. Examination of documents submitted in McBroom's criminal proceedings shows correlation between statements McBroom made during those proceedings and the messages conveyed in his poems that were not coincidental, and could only be intentional. Examination of the poems undeniably establishes that McBroom's "fiction" label was a ruse, and that his statements and language were thinly-veiled attacks and threats directed at the victim of his sexual assault and at prison staff once he discovered that his mail was being inspected. Given these circumstances, the district court did not err in determining that McBroom was properly disciplined for making threats against others in violation of DOC policies.

In his addendum, McBroom includes a copy of a recent Supreme Court decision, *Elonis v. United States*, 135 S. Ct. 2001 (2015). In that case, the Supreme Court reversed the defendant's federal conviction of making threatening communications based on comments he posted on the social networking site, Facebook. 135 S. Ct. at 2002, 2013. The Supreme Court held that the federal crime required a mens rea showing that the

11

defendant intended to issue a threat or that he knew that the communication would be viewed as a threat. *Id.* at 2011-12. McBroom does not explain how *Elonis* supports his arguments in this habeas appeal or how the Supreme Court's analysis of a federal crime applies to DOC's decision to discipline him for threatening others. Nevertheless, the evidence presented to the hearing officers established that McBroom possessed the requisite intent discussed in *Elonis*: McBroom transmitted his poems "for the purpose of issuing a threat, or with knowledge that [the poems would] be viewed as a threat." *Id.* at 2012. And he was properly disciplined for making threats against others.

McBroom finally attempts to characterize DOC actions in disciplining him as cruel and unusual punishment. But he does not explain how DOC's policies or procedures violate this constitutional prohibition, and he does not demonstrate the existence of facts that show DOC's decision to discipline him rose to the level necessary to show cruel and unusual punishment. *See State ex rel. Crosby v. Wood*, 265 N.W.2d 638, 639 (Minn. 1978) (denying habeas petition of inmate who claimed he was beaten by guards, where petitioner failed to show that the alleged beating was part of a course of mistreatment).

The district court's order denying McBroom relief and dismissing his petition for a writ of habeas corpus is affirmed.

**Affirmed.**