James John RUD, petitioner,
Respondent,

v.

Joan FABIAN, Commissioner of
Corrections, Appellant.

No. A06–2381.

Court of Appeals of Minnesota.

Dec. 31, 2007.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, Vadim Trifel, Student Attorney, St. Paul, MN, for respondent.

Brent D. Wartner, Director, Policy & Legal Services, Krista J. Guinn, Associate Legal Counsel, St. Paul, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; WILLIS, Judge; and WRIGHT, Judge.

## OPINION

PETERSON, Judge.

This appeal is from a judgment that grants an inmate's petition for a writ of habeas corpus and orders that good time that the inmate lost as a sanction for violating a prison disciplinary rule be reinstated. The judgment also orders the commissioner of corrections to create an administrative procedure for restoring good time lost as a result of a disciplinary violation. Because the statute that authorized the prison disciplinary rule that the inmate violated, as applied to the inmate, is an ex post facto law, we affirm the granting of the inmate's petition and the reinstatement of the good time lost as a result of the violation. But because, in a habeas corpus proceeding, the district court does not have authority to order the commissioner of corrections to create an administrative procedure to be used by inmates in future administrative proceedings, we reverse the order that directs the commissioner of corrections to create an administrative procedure for restoring lost good time.

## FACTS

In 1983, respondent James John Rud was charged with more than 75 counts of criminal sexual conduct. On August 15, 1984, Rud pleaded guilty to ten counts of criminal sexual conduct, and, in accordance with a plea agreement, all other charges were dismissed. In January 1985, Rud was sentenced to 480 months in prison. In February 1985, the district court issued an

amended sentencing order that imposed a 463–month sentence. Rud filed a direct appeal challenging his sentence, and this court affirmed. *State v. Rud,* 372 N.W.2d 434 (Minn.App.1985), *review denied* (Minn. Sept. 26, 1985).

In January 2003, appellant commissioner of corrections required Rud to enter sex-offender treatment, but Rud refused. Rud was served with a notice of violation of offender discipline regulation (ODR) 510, which prohibits an offender from refusing an order to participate in treatment. Following a disciplinary hearing, a hearing officer found Rud guilty of the violation and imposed a penalty of 270 days during which good time is not earned, which results in 90 days of lost good time and, as a result, 90 days of additional time that Rud must serve in prison. Rud appealed to the warden, and the warden affirmed the hearing officer's decision.

Rud filed a petition for a writ of habeas corpus in the district court, arguing that taking away 90 days of good time as a disciplinary sanction for his refusal to participate in sex-offender treatment violated his constitutional rights. The district court determined that no evidentiary hearing was required because the issues could be determined as a matter of law. The district court concluded that because sex-offender treatment was voluntary and refusing to participate in treatment could not result in a disciplinary violation when Rud was sentenced in 1985, a later-enacted statute that permitted a disciplinary sanction for refusing to participate in treatment is an ex post facto law. The district court also concluded that Rud was denied due process because there is no procedure that he can use to restore good time lost as a result of a disciplinary violation. The district court granted Rud's petition and ordered that Rud's 90 days of good time be reinstated. The district court also ordered

the commissioner to create a procedure for restoring good time that was lost as a result of a disciplinary violation. This appeal followed.

## ISSUES

1. In 1985, did the commissioner of corrections have authority to require an inmate to participate in a mental-health program if the inmate did not desire to voluntarily participate in the program?

2. Is the amendment to Minn.Stat. § 244.03 (1998) enacted by 1999 Minn. Laws ch. 126, § 8, an ex post facto law when applied to require an inmate sentenced in 1985 to participate in a mental-health program that the inmate does not desire to voluntarily participate in?

3. In a habeas corpus proceeding, does the district court have authority to order the commissioner of corrections to create an administrative procedure to be used by inmates in future administrative proceedings?

## ANALYSIS

■ A writ of habeas corpus is a statutory civil remedy available to obtain relief from unlawful imprisonment or restraint. Minn.Stat. § 589.01 (2006); *see also Loyd v. Fabian,* 682 N.W.2d 688, 690 (Minn.App. 2004) (construing Minn.Stat. § 589.01 (2000)), *review denied* (Minn. Oct. 19, 2004). "A writ of habeas corpus may also be used to raise claims involving fundamental constitutional rights and significant restraints on a defendant's liberty or to challenge the conditions of confinement." *State ex rel. Guth v. Fabian,* 716 N.W.2d 23, 26 (Minn.App.2006), *review denied* (Minn. Aug. 15, 2006).

■ The district court's findings in ruling on a petition for habeas corpus are entitled to great weight and will be upheld if reasonably supported by the evidence.

*Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn.App.1998), *review denied* (Minn. Nov. 17, 1998). Questions of law, however, are subject to de novo review. *Guth*, 716 N.W.2d at 26. Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

## I.

■ Under the statutes in effect when Rud was sentenced in 1985, the commissioner of corrections had the general authority "[t]o determine the place of confinement of committed persons in a correctional facility ... and to prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or outside the facility." Minn.Stat. § 241.01, subd. 3a(b) (1984). Rud does not dispute that when he was sentenced, the commissioner had general authority to promulgate disciplinary rules.

But another statute in effect when Rud was sentenced stated that "[t]he commissioner shall provide appropriate mental health programs and vocational and educational programs with employment-related goals *for inmates who desire to voluntarily participate in such programs.*" Minn.Stat. § 244.03 (1984) (emphasis added). Rud contends that the emphasized language in section 244.03 indicates that when he was sentenced, the legislature intended to grant the commissioner authority to provide mental-health programs only for inmates who desired to voluntarily participate in the programs and that this specific statute regarding mental-health programs controls over the general statute regarding reasonable conditions and rules for the employment, conduct, instruction, and discipline of committed persons in a correctional facility. *See* Minn.Stat. § 645.26, subd. 1 (2006) (stating, "[i]f the

conflict between [a general provision in a law and a special provision in the same or another law] be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision"). Therefore, Rud argues, the commissioner's general authority to prescribe reasonable conditions for instruction and discipline under Minn.Stat. § 241.01, subd. 3a(b), was limited by Minn.Stat. § 244.03 with respect to participation in mental-health programs, and the commissioner's general authority did not include authority to require an inmate to participate in a mental-health program when the inmate did not desire to voluntarily participate or to discipline an inmate for refusing to participate in a mental-health program.

The commissioner argues that the statutory requirement to provide mental-health programs for inmates who desire to voluntarily participate in the programs did not limit her general authority to prescribe rules that require an inmate to participate in sex-offender treatment even when the inmate does not desire to voluntarily participate and to promulgate disciplinary rules that permit sanctions to be imposed when an inmate fails to participate in required treatment. The commissioner contends that the requirement in Minn.Stat. § 244.03 that she provide programs for certain inmates did not remove her discretionary authority to also provide programs for other inmates and to require those inmates to participate in those programs.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (2006). Our examination of sentencing statutes enacted before and after Rud was sentenced persuades us that when Rud was sentenced, the legislature intended Minn.Stat. § 244.03 to be a limi-

tation on the commissioner's general authority to require inmates to participate in mental-health programs. *See* Minn.Stat. § 645.16 (stating "[w]hen the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters ... the former law, if any, including other laws upon the same or similar subjects").

Minn.Stat. § 244.03 was originally enacted in 1978 as a part of legislation that created the sentencing-guidelines system. 1978 Minn. Laws ch. 723, art. 1, § 3 at 763. That legislation also created the "good time" system, which reduces an inmate's term of imprisonment by one day for each two days that the inmate does not violate a disciplinary-offense rule and, following the inmate's term of imprisonment, requires the inmate to serve a supervised-release term equal to the period of good time that the inmate has earned. 1978 Minn. Laws ch. 723, art. 1, §§ 4 and 5 at 763–64. When Rud was sentenced in 1985, Minn. Stat. § 244.03 had never been amended, and as we have already noted, the statute stated that "[t]he commissioner shall provide appropriate mental health programs ... for inmates who desire to voluntarily participate in such programs."

The first substantive amendment to Minn.Stat. § 244.03 was enacted in 1992 as a part of legislation that, among other things, replaced the "good time" system for reducing prison sentences with a system that allows an inmate's prison term to be extended when the inmate violates a disciplinary-offense rule. 1992 Minn. Laws ch. 571, art. 2, § 6 at 2005. As part of this system, the legislature directed the commissioner to

modify the commissioner's existing disciplinary rules to specify disciplinary offenses which may result in imposition of a disciplinary confinement period and the length of the disciplinary confinement period for each disciplinary offense. These disciplinary offense rules may cover violation of institution rules, refusal to work, *refusal to participate in treatment or other rehabilitative programs*, and other matters determined by the commissioner.

*Id.* at 2005–06 (emphasis added).

This legislative directive was codified as Minn.Stat. § 244.05, subd. 1b(b), and consistent with granting the commissioner authority to impose a disciplinary confinement period for refusal to participate in treatment or other rehabilitative programs, the legislature also amended Minn. Stat. § 244.03 to require the commissioner to provide these programs for inmates who are required to participate.[1] 1992 Minn. Laws ch. 571, art. 2, § 2 at 2004. Following this amendment, which added the following underlined language, Minn.Stat. § 244.03 stated:

The commissioner shall provide appropriate mental health programs and vocational and educational programs with employment-related goals for inmates who desire to voluntarily participate in such programs *and for inmates who are required to participate in the programs under the disciplinary offense rules adopted by the commissioner under section 244.05, subdivision 1b.*

But when the legislature replaced the "good time" system and amended section 244.03 to require the commissioner to provide programs for inmates who are required to participate in the programs un-

---

**1.** The requirement that the commissioner provide programs for inmates who are required to participate in the programs reflects an apparent legislative recognition that if an inmate is required to participate in a program and will be subject to disciplinary confinement for refusing to participate, the program must be made available to the inmate.

der the disciplinary offense rules adopted by the commissioner under section 244.05, subd. 1b, it specifically stated that these statutory changes apply to crimes committed on or after August 1, 1993. 1992 Minn. Laws ch. 571, art. 2, § 14 at 2009. This demonstrates that the legislature did not intend that the new sentencing system should apply to inmates who were convicted of crimes committed before August 1, 1993.[2] Consequently, Minn.Stat. § 244.05, subd. 1b(b), did not grant the commissioner authority to discipline Rud for refusing to participate in treatment.

However, in 1999, the legislature further amended Minn.Stat. § 244.03 by deleting the language that referred to inmates who desire to voluntarily participate in programs and inmates who are required to participate in programs. 1999 Minn. Laws ch. 126, § 8 at 521–22. Following this amendment, the statute simply stated, "[t]he commissioner shall provide appropriate mental health programs and vocational and educational programs with employment-related goals for inmates."

If this were the only change made by the 1999 amendment, the legislative history of Minn.Stat. § 244.03 would be consistent with the commissioner's argument that when Rud was sentenced in 1985, she had discretionary authority under Minn.Stat. § 241.01, subd. 3a(b), to require any inmate to participate in sex-offender treatment and to discipline any inmate who refused to participate, and

rather than limiting this authority, Minn. Stat. § 244.03 required the commissioner to provide appropriate mental-health programs for inmates who desired to voluntarily participate. Under the commissioner's interpretation of the statutes, we would interpret the 1999 amendment to have simply removed the specific requirement that the commissioner provide mental-health programs for inmates who desired to voluntarily participate and replaced it with a general requirement that she provide appropriate programs for inmates.

But in addition to deleting the language that referred to inmates who desire to voluntarily participate in mental-health programs and inmates who are required to participate in programs, the 1999 amendment also added a sentence to Minn.Stat. § 244.03, which states, "[t]he commissioner may impose disciplinary sanctions upon any inmate who refuses to participate in rehabilitative programs." 1999 Minn. Laws ch. 126, § 8 at 522. We presume that this amendment was "passed by the legislature 'with deliberation and full knowledge of all existing legislation on the subject and regarded by the lawmakers as being part of a connected whole.'" *State v. Chambers*, 589 N.W.2d 466, 480 (Minn. 1999) (quoting *Kaljuste v. Hennepin County Sanatorium Comm'n*, 240 Minn. 407, 414, 61 N.W.2d 757, 762 (1953)). If the legislature intended before 1999 that the commissioner had discretionary authority under Minn.Stat. § 241.01, subd.

---

2. In 1992, the legislature also amended Minn. Stat. § 244.04, subd. 1, which provides for the reduction of an inmate's sentence under the "good time" system. 1992 Minn. Laws ch. 571, art. 2, § 3 at 2004–005. Following the amendment, which added the following underlined language, Minn.Stat. § 244.04, subd. 1, stated that

the term of imprisonment of any inmate sentenced to a presumptive fixed sentence after May 1, 1980, *and whose crime was*

*committed before August 1, 1993,* shall be reduced in duration by one day for each two days during which the inmate violates none of the disciplinary offense rules promulgated by the commissioner.

This amendment is a further indication that the legislature intended that the new system should not apply to inmates whose crimes were committed before August 1, 1993, and that the "good time" system should continue to apply to these inmates.

3a(b), to require any inmate to participate in sex-offender treatment and to discipline any inmate who refused to participate, there would have been no need to add this sentence to Minn.Stat. § 244.03 because the sentence would have only granted the commissioner authority that had already been granted under Minn.Stat. § 241.01, subd. 3a(b). Therefore, we conclude that before 1999, Minn.Stat. § 244.03 limited the commissioner's general disciplinary authority under Minn.Stat. § 241.01, subd. 3a(b), and when Rud was sentenced in 1985, the commissioner did not have authority under Minn.Stat. § 241.01, subd. 3a(b), to require Rud to participate in a mental-health program if Rud did not desire to voluntarily participate in the program and to discipline Rud if he refused to participate.

## II.

■ The district court concluded that because Rud could not be punished for refusing to participate in treatment at the time he was sentenced, applying Minn. Stat. § 244.05, subd. 1b, to Rud violated the ex post facto clauses of the United States and Minnesota Constitutions. But the district court also correctly concluded that Minn.Stat. § 244.05, subd. 1b, does not apply to Rud because his offense was committed before August 1, 1993. It is not clear why, after concluding that Minn. Stat. § 244.05, subd. 1b, does not apply to Rud, the district court went on to conclude that applying the statute to Rud violated his constitutional rights. It appears that in the district court, Rud cited Minn.Stat. § 244.05, subd. 1b, as the statute that provided the commissioner with authority to punish inmates for refusing treatment, and

the district court then cited the statute in its order.

As we have already explained, the statutory change that purportedly allowed the commissioner to require Rud to participate in a mental-health program if Rud did not desire to voluntarily participate was the 1999 amendment to Minn.Stat. § 244.03.[3] However, the incorrect citation of the applicable statutory source of the commissioner's authority did not affect the district court's substantive analysis of Rud's claim under the ex post facto clauses. Rud claimed in the district court that when he was sentenced, he could not be subjected to the loss of good time for refusing to participate in treatment, and after he was sentenced, the sentencing statutes were amended in a manner that permitted him to be subjected to the loss of good time for refusing to participate in treatment. As we have explained, this was the effect of the 1999 amendment to Minn.Stat. § 244.03, and, therefore, the issue before us is whether applying this legislative enactment to Rud violated his rights under the ex post facto clauses of the United States and Minnesota Constitutions.

Appellate courts review de novo a district court's conclusions as to the application of a constitutional provision. *State v. Fort,* 660 N.W.2d 415, 418 (Minn.2003). Both the United States and Minnesota Constitutions prohibit the enactment of ex post facto laws. *Starkweather v. Blair,* 245 Minn. 371, 389, 71 N.W.2d 869, 881 (1955). "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960,

---

**3.** The commissioner argued in the district court that Minn.Stat. § 244.03 provides statutory authority for her to discipline any offend-

er, and she expressly argues on appeal that Minn.Stat. § 244.03 is not an ex post facto law.

964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall). 277, 325–326, 18 L.Ed. 356 (1866)). *See also Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 138, 3 L.Ed. 162 (1810) ("An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed").

In *Weaver*, an inmate was sentenced under a Florida statute that provided a formula for deducting time from an inmate's sentence using gain-time credits, which benefited "every prisoner who had committed no infraction of the rules or regulations of the division, or of the laws of the state, and who has performed in a faithful, diligent, industrious, orderly and peaceful manner, the work, duties and tasks assigned to him." 450 U.S. at 26, 101 S.Ct. at 962–63 (quoting Fla. Stat. § 944.27(1) (1975)). The Florida statute was similar to the good-time statute in effect in Minnesota when Rud was sentenced in that both statutes allowed an inmate to reduce the amount of time spent in prison by obeying disciplinary rules while in prison. The Florida statute included a more complicated formula for calculating a sentence reduction than the Minnesota statute, but the statutes operated in basically the same manner. After the inmate in *Weaver* was sentenced, Florida repealed its statute and enacted a new statute that significantly decreased the number of days of gain time that an inmate could accrue for each month of good conduct. *Id.* at 26, 101 S.Ct at 963. The Supreme Court held that applying the later statute to an inmate who was convicted of a crime that occurred before the statute's effective date violated the Ex Post Facto Clause of the United States Constitution because "the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." *Id.* at 35–36, 101 S.Ct. at 968.

The commissioner argues that the amendment to Minn.Stat. § 244.03 that allows the commissioner to impose a loss of good time for refusing to participate in treatment does not constitute a constitutionally significant change in penalty for purposes of ex post facto analysis. The commissioner contends that at sentencing, Rud was ordered to serve a 463–month sentence in the custody of the commissioner, and the change in disciplinary rules permitting Rud to lose good time for refusing to participate in treatment did not change this penalty because Rud can continue to earn the same amount of good time if he adheres to prison rules and regulations.

But the commissioner's argument ignores the actual effect of the 1999 amendment to Minn.Stat. § 244.03. When he was sentenced, Rud could refuse to participate in treatment without losing any good time because, at that time, under Minn.Stat. § 244.03, the commissioner was not permitted to require participation in treatment. The 1999 amendment changed this by allowing the commissioner to require participation and to impose a loss of good time for refusing to participate. In fact, Rud lost 90 days of good time for refusing to participate in treatment. Thus, although the amendment to Minn.Stat. § 244.03 did not act to increase the length of Rud's executed sentence, it constricted his opportunity to earn good time and made the punishment for his crime more onerous by increasing the amount of time that he must spend in prison.

The commissioner's argument is similar to an argument made by the respondent in *Weaver* in defense of the Florida statute. In addition to decreasing the amount of gain time that an inmate could accrue, the new Florida statute included other provisions that permitted "discretionary grants

of additional gain time for inmates who not only satisfy the good-conduct requirement, but who also deserve extra rewards under designated categories." 450 U.S. at 34, n. 18, 101 S.Ct. at 967. The respondent argued that in determining whether the new statute substantially changed the quantum of punishment, the loss of gain time under one provision of the statute must be examined in conjunction with other provisions that allowed inmates to acquire extra gain time. *Id.* at 34, 101 S.Ct. at 967. The Supreme Court rejected this argument and explained that

> none of these provisions for extra gain time compensates for the reduction of gain time available solely for good conduct. The fact remains that an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed [statute] than he could for the same conduct under the new [statute]. To make up the difference, the inmate has to satisfy the extra conditions specified by the discretionary gain-time provisions.

*Id.* at 35, 101 S.Ct. at 967.

We recognize that the commissioner is correct when she argues that under the new statute, Rud can earn the same amount of good time if he adheres to prison rules and regulations. But to adhere to prison rules and regulations under the new statute, Rud must change his conduct from what was required under the old statute. As in *Weaver*, the fact remains that for exactly the same conduct, Rud could obtain more good time under the old statute than he can under the new statute. This fact cannot be avoided by changing prison rules and regulations and simply saying that all that is required under both statutes is that Rud adhere to the rules and regulations.

The commissioner argues that disciplinary sanctions imposed on inmates for failing to obey prison rules do not constitute an increased penalty because disciplinary sanctions are remedial, rather than penal, in nature. We do not disagree that, generally, prison disciplinary sanctions are considered to be remedial because their purpose is to maintain order and protect inmates and prison staff. *See State v. McKenzie*, 542 N.W.2d 616, 620 (Minn. 1996) (loss of good-time credit and placing inmate in segregation are designed to achieve remedial goals of establishing institutional order and protecting prison staff and fellow inmates from violent or uncooperative prisoners). But in this case, there is no indication that the disciplinary sanction was imposed on Rud to maintain order or to protect other inmates or prison staff. The record indicates that the only conduct that prompted imposition of the penalty was Rud's refusal to participate in treatment. Also, the memorandum submitted to the warden in Rud's discipline-hearing appeal indicates that Department of Corrections policy permits offenders with sex-related convictions to be referred to the Minnesota Sex Offender Program "as a means to reduce their risk to the general public." This demonstrates that Rud was referred to treatment because he had sex-related convictions, rather than because he was causing any problem in prison.

The commissioner also argues that the amendment to Minn.Stat. § 244.03 is not a retrospective law as applied to Rud because Rud was sanctioned for refusing to participate in treatment, and his refusal occurred after the amendment to Minn. Stat. § 244.03 became effective. But this argument ignores the fact that when Rud was sentenced, the punishment prescribed by the legislature for his offenses did not include a disciplinary sanction if he refused to participate in treatment while in prison.

The Supreme Court explained in *Weaver* that "it is the effect, not the form, of the

law that determines whether it is *ex post facto*. The critical question is whether the law changes the legal consequences of acts completed before its effective date." 450 U.S. at 31, 101 S.Ct. at 965. The effect of the amendment to Minn.Stat. § 244.03 was to permit the commissioner to impose a disciplinary sanction on Rud that could not have been imposed when he was sentenced. This newly permitted sanction is a change in the legal consequences of Rud's offenses.

We conclude that, as applied to Rud, the 1999 amendment to Minn.Stat. § 244.03, which removed the limitation on the commissioner of correction's general disciplinary authority under Minn.Stat. § 241.01, subd. 3a(b), and purportedly authorized the commissioner to require Rud to participate in a mental-health program and to increase the amount of time that Rud must spend in prison if he refuses to participate, is an ex post facto law. Therefore, the 90 days of good time that Rud was denied for refusing to participate in sex-offender treatment must be reinstated.

### III.

■ In 1978, when the legislature created the "good time" system as part of the sentencing-guidelines system, it directed that "[b]y May 1, 1980, the commissioner [of corrections] shall promulgate rules specifying disciplinary offenses which may result in the loss of good time and the amount of good time which may be lost as a result of each disciplinary offense." 1978 Minn. Laws ch. 723, art. I, § 4, subd. 2 at 763. In 1980, the legislature added to this directive the requirement that the rules promulgated by the commissioner include "provision for restoration of good time." 1980 Minn. Laws ch. 417, § 14 at 156–67. These directives were codified at Minn. Stat. § 244.04, subd. 2.

The district court determined that Rud is being denied due process because there is no process that he can use to restore the good time that he lost as a result of his violation of ODR 510. The district court also ordered the commissioner to create a procedure for restoring good time lost as a result of a disciplinary violation.

Because we have already concluded that as applied to Rud, the 1999 amendment to Minn.Stat. § 244.03 is an ex post facto law, and, therefore, the 90 days of good time that Rud was improperly denied must be reinstated, it is not necessary for us to also determine whether Rud is being denied due process because there is no procedure for restoring good time lost as a result of a disciplinary violation. But the district court's order directing the commissioner to create a procedure for restoring lost good time does not apply only to the 90 days of good time that Rud lost; it directs the commissioner to create a procedure for any inmate to use for restoring good time lost as a result of a disciplinary violation.

■ We have not found any authority that permits a district court to grant general declaratory or injunctive relief in a habeas proceeding.

A person imprisoned or otherwise restrained of liberty, except persons committed or detained by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon the judgment, may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint.

Minn.Stat. § 589.01 (2006); *see also Kelsey v. State*, 283 N.W.2d 892, 895 (Minn.1979) (stating that supreme court has inherent judicial power to create exception to general rule that habeas is unavailable to prisoner confined pursuant to final judgment). "The scope of inquiry in habeas corpus proceedings is limited to constitutional issues, jurisdictional challenges, claims that confinement constitutes cruel and unusual

punishment, and claims that confinement violates applicable statutes." *Loyd*, 682 N.W.2d at 690 (citing *Kelsey*, 283 N.W.2d at 894–95 (stating that habeas corpus may be used to test whether denial of parole violates applicable statutes or constitutional provisions and to test allegations that confinement conditions constitute cruel and unusual punishment); *State of Minn., ex rel. Griep v. Skon*, 568 N.W.2d 453, 454–55 (Minn.App.1997) (reviewing district court denial of habeas petition where petitioner claimed hearing officer lacked jurisdiction and disciplinary proceeding allegedly violated due process)). "Habeas is also an appropriate remedy if the relief to which a petitioner may be entitled is immediate release." *Id.* (citing *Kelsey v. State ex rel. McManus*, 309 Minn. 560, 561, 244 N.W.2d 53, 54 (1976)).

The district court's order directing the commissioner to create a procedure for restoration of good time does not directly address any of the items listed above. Instead, the order addresses the creation of an administrative process for restoring lost good time in future cases, an issue that case law indicates is beyond the scope of a habeas proceeding. *Cf. State ex rel. Butler v. Swenson*, 243 Minn. 24, 28–29, 66 N.W.2d 1, 4 (1954) (stating that assertions of impropriety and incompetence by counsel did not constitute deprivation of fundamental right and, therefore, could not be addressed in habeas proceeding); *Loyd*, 682 N.W.2d at 690–91 (concluding that request for relief under contract theory was outside permissible scope of habeas proceeding); *Sanders v. State*, 400 N.W.2d 175, 177 (Minn.App.1987) (upholding denial of habeas corpus, when inmate sought temporary release to pursue discovery to pursue new trial based on newly discovered evidence, because any relief to which inmate might be entitled must be secured by administrative procedures), *review denied* (Minn. Apr. 17, 1987). Because we have found no authority that permits the district court in a habeas corpus proceeding to order the commissioner to create an administrative procedure to be used in future cases, we reverse the district court's order directing the commissioner to create a procedure for restoration of good time.

### DECISION

Because the 1999 amendment to Minn. Stat. § 244.03, as applied to Rud, is an ex post facto law, we affirm the granting of Rud's petition and the reinstatement of the 90 days of good time that Rud lost as a sanction for violating ODR 510. Because, in a habeas corpus proceeding, the district court does not have authority to order the commissioner of corrections to create an administrative procedure to be used by inmates in future administrative proceedings, we reverse the order that directs the commissioner of corrections to create an administrative procedure for restoring lost good time.

**Affirmed in part and reversed in part.**