*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0428**

State of Minnesota, ex rel.
Anthony Alan Early, petitioner,
Appellant,

vs.

Tom Roy,
Commissioner of Corrections,
Respondent.

**Filed October 11, 2016
Affirmed
Johnson, Judge**

Carlton County District Court
File No. 09-CV-15-1861

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Kelly S. Kemp, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Anthony Alan Early is confined in a state correctional facility, serving a 42-month sentence for a conviction of being a prohibited person in possession of a firearm. The

commissioner of corrections extended his incarceration by 15 days because he refused to participate in a sex-offender treatment program. Early challenged the extension of his incarceration by filing a petition for a writ of habeas corpus. He alleged that being required to participate in sex-offender treatment, or having his incarceration extended for refusing to participate, is a violation of his Fifth Amendment right against self-incrimination because he was in the process of pursuing a direct appeal from his conviction of being a prohibited person in possession of a firearm. The district court denied the petition. We conclude that Early did not allege or offer evidence that his participation in the treatment program would have revealed information that would be incriminating with respect to the conviction for which he was pursuing a direct appeal. Therefore, we affirm.

## FACTS

In 2002, Early pleaded guilty in Hennepin County to first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(e)(i) (2000). He was sentenced to 60 months of imprisonment. He alleged in his habeas petition in this action that his 2002 sentence has expired.

In September 2014, Early was convicted in Hennepin County of being a prohibited person in possession of a firearm, in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). He alleged in his habeas petition that he was found guilty after a "*Lothenbach* trial," which we understand to mean a court trial based on a stipulation to the prosecution's case to obtain appellate review of a pre-trial ruling. *See* Minn. R. Crim. P. 26.01, subd. 4. In November 2014, Early was sentenced to 42 months of imprisonment and was delivered to the custody of the commissioner of corrections.

2

In December 2014, an employee of the department of corrections recommended that Early participate in the department's general sex-offender treatment program. But in January 2015, Early refused to participate in the program. Six days later, the department charged Early with a violation of a prison disciplinary rule for his refusal to participate. Early waived his right to a disciplinary hearing and admitted that he violated the disciplinary rule. As a penalty, the department extended Early's projected release date by 15 days.

Meanwhile, Early took steps to pursue a direct appeal from his conviction of being a prohibited person in possession of a firearm. He contacted the office of the state public defender and requested representation on appeal. In January 2015, that office determined that Early was eligible for public defender services, and an assistant state public defender filed a notice of appeal on his behalf.

In September 2015, while Early was incarcerated at the correctional facility in Moose Lake, he filed a petition for a writ of habeas corpus in the Carlton County District Court. He argued that being required to participate in sex-offender treatment, or having his incarceration extended for refusing to participate, violated his Fifth Amendment right against self-incrimination because he was in the process of challenging his conviction on direct appeal. He requested an order directing the commissioner to rescind the 15-day extension of his incarceration. The commissioner opposed the petition.

In January 2016, the district court denied the petition. The district court reasoned that the commissioner did not violate Early's Fifth Amendment right against self-incrimination because Early did not assert the right at the time he was charged with

violating the disciplinary rule, because Early waived his right to a hearing on the disciplinary charge, and because Early admitted that he violated the disciplinary rule. The district court also reasoned that the commissioner did not violate Early's Fifth Amendment right against self-incrimination because Early "was never asked or compelled to answer incriminating questions about a case currently pending appeal" and "[i]t is not at all clear or likely that participating in treatment would require" the disclosure of information that would be incriminating.

One week after the district court's denial of Early's habeas petition, this court issued an opinion in which we affirmed Early's conviction of being a prohibited person in possession of a firearm. Early filed a petition for further review, which the supreme court denied. *State v. Early*, A15-0180, 2016 WL 208147 (Minn. App. Jan. 19, 2016), *review denied* (Minn. Mar. 29, 2016).

Early appeals from the district court's denial of his petition for a writ of habeas corpus.

**D E C I S I O N**

Early argues that the district court erred by denying his petition for a writ of habeas corpus. In response, the commissioner makes two arguments. First, the commissioner argues that Early waived or forfeited his right to challenge the extension of his incarceration by not expressly asserting his Fifth Amendment right against self-incrimination at the time of his refusal to participate in the sex-offender treatment program or at the time of prison disciplinary proceedings. Second, the commissioner argues that

4

Early failed to establish that participation in the sex-offender treatment program would have required him to disclose incriminating information concerning his pending appeal.

**A.**

The right to file a writ of habeas corpus is guaranteed by the state constitution. Minn. Const. art. I, § 7. The legislature has fulfilled that guarantee by enacting a statute that provides a habeas remedy. *See* Minn. Stat. §§ 589.01-.35 (2014). The relevant chapter begins by stating:

> A person imprisoned or otherwise restrained of liberty, except persons committed or detained by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon the judgment, may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint.

Minn. Stat. § 589.01. A prisoner may use the habeas procedure to obtain judicial review of a decision of the commissioner of corrections that extends incarceration as punishment for a violation of a prison disciplinary rule. *Johnson v. Fabian*, 735 N.W.2d 295, 298 (Minn. 2007); *Bedell v. Roy*, 853 N.W.2d 827, 828-29 (Minn. App. 2014), *review denied* (Minn. Oct. 28, 2014). A person filing a petition for a writ of habeas corpus must describe in the petition the nature of the unlawful imprisonment or restraint. Minn. Stat. § 589.04(f). A district court need not hold a hearing on the petition unless the petitioner has "alleged sufficient facts to constitute a prima facie case for relief," *Case v. Pung*, 413 N.W.2d 261, 263 (Minn. App. 1987), *review denied* (Minn. Nov. 24, 1987), and has demonstrated the existence of a factual dispute, *Seifert v. Erickson*, 420 N.W.2d 917, 920 (Minn. App. 1988), *review denied* (Minn. May 18, 1988).

**B.**

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also* Minn. Const. art. I, § 7. A person may rely on the Fifth Amendment right against self-incrimination in "'any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 322 (1973)); *see also Martin v. State*, 865 N.W.2d 282, 288 (Minn. 2015); *Johnson*, 735 N.W.2d at 299.

Early relies primarily on *Johnson*. The *Johnson* opinion resolved the consolidated appeals of two inmates who, like Early, were required by the commissioner of corrections to participate in sex-offender treatment. 735 N.W.2d at 297. The first inmate, Johnson, was convicted of fifth-degree assault, third-degree criminal sexual conduct, and first-degree burglary after a jury trial. *Id.* at 297. His conviction was affirmed on direct appeal. *Id.* at 298. But while his direct appeal was pending, the commissioner ordered him to participate in sex-offender treatment "with the expectation that he [would] admit the offense and discuss the criminal acts that resulted in his conviction as part of that treatment program." *Id.* Johnson "resisted participation" in sex-offender treatment because he did not want to make any admissions while his direct appeal was pending. *Id.* The commissioner disciplined him for his refusal to participate by extending his incarceration by 45 days. *Id.* The district court denied Johnson's habeas petition on the ground that Johnson was not compelled to participate and did not participate. *Id.* The supreme court

reversed, reasoning that the commissioner violated Johnson's Fifth Amendment right against self-incrimination because his direct appeal was pending when he refused to participate in sex-offender treatment and because the extension of his imprisonment "r[o]se to the level of compulsion for purposes of [his] Fifth Amendment privilege against self-incrimination." *Id.* at 309.

The second inmate, Henderson, was convicted of first-degree criminal sexual conduct. *Id.* at 298. Henderson testified at trial that he did not have any sexual contact with the victim. *Id.* His conviction was affirmed on direct appeal. *Id.* After his direct appeal was resolved, the commissioner ordered him to participate in sex-offender treatment, but he refused to participate on the ground that participation would violate his Fifth Amendment right against self-incrimination. *Id.* The commissioner disciplined him for his refusal to participate by extending his incarceration by 45 days. *Id.* The district court denied Henderson's habeas petition on the ground that his direct appeal had been resolved when he refused to participate in treatment. *Id.* The supreme court reversed, reasoning that, even though Henderson's direct appeal had been resolved, any admission by him to sexual contact with the victim while in sex-offender treatment might expose him to a perjury prosecution. *Id.* at 310-11.

## C.

Before considering the merits of Early's argument, we must consider the commissioner's responsive argument that Early waived or forfeited his right to challenge the extension of his incarceration by waiving an administrative hearing and admitting the

7

alleged violation without expressly asserting his Fifth Amendment right against self-incrimination.

The commissioner does not cite any precedential authority for the proposition that an inmate must expressly raise a constitutional issue in prison disciplinary proceedings in order to pursue such a claim at a later date in a petition for a writ of habeas corpus. The absence of such authority tends to work against the commissioner because a party asserting waiver generally bears the burden of proving that the other party knew of a right and intended to waive it. *See Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). In addition, the commissioner's argument appears to be inconsistent with the supreme court's opinion in *Johnson*, which notes that inmate Henderson refused to enter sex-offender treatment and "*later* claim[ed] that his refusal was based on his Fifth Amendment privilege against self-incrimination." 735 N.W.2d at 298 (emphasis added).

The commissioner relies on caselaw stating generally that "a witness who desires the protection of the [Fifth Amendment] privilege [against self-incrimination] must claim it at the time he relies on it." *Salinas v. Texas*, 133 S. Ct. 2174, 2179 (2013) (quotations omitted). The *Salinas* opinion arose from a criminal trial, which prompted the Court to explain that the general rule "ensures that the Government is put on notice when a witness intends to rely on the privilege so that it may either argue that the testimony sought could not be self-incriminating or cure any potential self-incrimination through a grant of immunity." *Id.* (quotation omitted). But the *Salinas* Court also noted that there are exceptions to the general rule, such as the principle that "a criminal defendant need not take the stand and assert the privilege at his own trial." *Id.* The exceptions also encompass

8

the situation in which "governmental coercion makes . . . forfeiture of the privilege involuntary" and the situation in which "some form of official compulsion denies . . . a free choice to admit, to deny, or to refuse to answer." *Id.* at 2180 (quotations omitted). Early's situation appears to be within the exceptions to the general rule because he was involuntarily required to participate in the sex-offender treatment program and was involuntarily required to submit to prison disciplinary proceedings.

Thus, we conclude that Early did not waive or forfeit his Fifth Amendment right by not expressly asserting it in prison disciplinary proceedings.

**D.**

We proceed to the merits of Early's argument for reversal. The supreme court's opinion in *Johnson* established that the applicability of the Fifth Amendment right against self-incrimination in the context of prison-based sex-offender treatment programs hinges on the existence of "two distinct elements," namely, "compulsion and incrimination." 735 N.W.2d at 299. We focus on the second of these two elements, incrimination.

Early can prevail in this habeas action only if he alleges and proves that, if he had participated in the prison's sex-offender treatment program, "the information [he] would be compelled to divulge is incriminating." *See Johnson*, 735 N.W.2d at 309. The information divulged would be incriminating if it would "support a conviction or . . . would furnish a link in the chain of evidence needed to prosecute." *Id.* "[T]he risk of incrimination faced by the claimant must be substantial and real, not trifling or imaginary." *Id.* There must be a "'reasonable ground to apprehend danger . . . from his being compelled to answer,'" as opposed to "'a danger of an imaginary and unsubstantial character, having

9

reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.'" *Id.* (quoting *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 190, 124 S. Ct. 2451, 2460 (2004)).

The district court denied Early's petition based in part on the following reasons:

> [T]here is no evidence that Petitioner was compelled to respond to incriminating questions about his past offense [*i.e.*, his conviction of criminal sexual conduct]. To prevail on an alleged Fifth Amendment violation, "the risk of self-incrimination must be 'substantial and real.'" . . . . Furthermore, Petitioner's sex crime conviction, that which he would likely have been asked about in sex offender treatment, was well past its appeals period; his direct appeal period on the sex offense was exhausted such that he could no longer invoke his Fifth Amendment privilege.

Early contends that the district court "misunderstood [his] claim." He disavows any claim that his participation in sex-offender treatment might incriminate him with respect to his conviction of criminal sexual conduct, for which his sentence allegedly has expired. Rather, he contends that his participation in sex-offender treatment would be incriminating because he would be required to talk about his conviction of being a prohibited person in possession of a firearm.

The merits, if any, of Early's claim are not self-evident. There is no obvious reason why participating in sex-offender treatment necessarily would require him to disclose information that would "support a conviction" of or "furnish a link in the chain of evidence needed to prosecute" him for being a prohibited person in possession of a firearm. *See Johnson*, 735 N.W.2d at 309. In our opinion affirming his conviction of that offense, we stated the basic facts, and they do not appear to implicate sexual conduct in any way. *See Early*, A15-0180, 2016 WL 208147, at *1.

10

As the petitioner, Early must allege the factual basis of his unlawful imprisonment or restraint. Minn. Stat. § 589.04(f). He also must "allege[] sufficient facts to constitute a prima facie case for relief," *Case*, 413 N.W.2d at 263, and must demonstrate the existence of a factual dispute, *Seifert*, 420 N.W.2d at 920. Early's petition does not satisfy these requirements. His only relevant allegation is as follows: "If petitioner participates in sex offender treatment, he will be required to admit his criminal conduct. Any admissions could be used against him in a criminal proceeding." But this conclusory allegation does not explain the counter-intuitive premise that his possession of a firearm on one occasion would be a subject of discussion in sex-offender treatment. The premise is not supported by any of the exhibits that he submitted with his petition or any of the exhibits that the commissioner submitted. His conclusory allegation that he would be required to admit to being a prohibited person in possession of a firearm is insufficient to satisfy his obligation to plead facts that, if true, would entitle him to relief. *See Case*, 413 N.W.2d at 263.

Early appears to contend that a habeas petitioner who is required to participate in a treatment program automatically satisfies the incrimination requirement if he has a direct appeal pending, without regard for whether there is a nexus between the nature of the treatment program and the nature of the conviction on direct appeal. There is language in *Johnson* that might appear to support such an argument. For example, the supreme court stated, "We . . . now hold that a convicted individual can claim the privilege against self-incrimination as long as a direct appeal of that conviction is pending, or as long as the time for direct appeal of that conviction has not expired." *Johnson*, 735 N.W.2d at 310. That statement surely is based on the implied premise that the offense of conviction is related to

11

the required treatment. In such a case, it is not difficult for a habeas petitioner to plead and prove the incrimination requirement. But if an inmate claims that a treatment program will require him to disclose incriminating information concerning a conviction that is unrelated to the treatment program, the habeas petitioner must do more than make a conclusory allegation; the petitioner must allege facts with specificity and perhaps also support his allegations with admissible evidence. Without such an allegation and such evidence, the district court in this case could not conclude that Early's sex-offender treatment program would elicit incriminating information concerning his conviction of being a prohibited person in possession of a firearm.[1]

In light of the allegations in Early's habeas petition and the lack of supporting evidence, Early cannot establish that any information he would be required to disclose in

---

[1]We note that Early does not argue that he is entitled to rely on his Fifth Amendment right against self-incrimination due to fear of a perjury prosecution, which was the basis of relief for inmate Henderson in *Johnson*. *See* 735 N.W.2d at 310-11. Early likely did not testify at the trial that led to his conviction because he was found guilty in a court trial based on a stipulation to the prosecution's evidence to obtain appellate review of a pre-trial ruling. *See* Minn. R. Crim. P. 26.01, subd. 4. One prerequisite of such a trial is that "[t]he defendant must stipulate to the prosecutor's evidence." Minn. R. Crim. P. 26.01, subd. 4(e). If Early did not testify at trial, there is no possibility of a perjury prosecution.

We also note that the commissioner does not argue that any incriminating statements made by Early in treatment would be inconsequential because there was no possibility that Early would be subjected to a retrial for being a prohibited person in possession of a firearm. In a court trial conducted pursuant to rule 26.01, subdivision 4, the parties must "agree that the [district] court's ruling on a specified pretrial issue is dispositive of the case, or that the ruling makes a contested trial unnecessary." Minn. R. Crim. P. 26.01, subd. 4(a). Accordingly, if Early had prevailed on direct appeal, this court would have reversed his conviction without remanding for a new trial, and the state would not have been permitted to retry him. *See State v. Yang*, 814 N.W.2d 716, 718, 722-23 (Minn. App. 2012) (reversing conviction without remand after concluding that district court erred in pre-trial ruling in case tried pursuant to rule 26.01, subdivision 4).

12

sex-offender treatment would "support a conviction" of or would "furnish a link in the chain of evidence needed to prosecute" him for being a prohibited person in possession of a firearm. *See id.* at 309. As far as the record reveals, Early does not have a "'reasonable ground to apprehend danger . . . from his being compelled to answer.'" *See id.* Rather, he has nothing more than "'a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.'" *Id.* (quoting *Hiibel*, 542 U.S. at 190, 124 S. Ct. at 2460). Thus, Early cannot establish that, if he had participated in the sex-offender treatment program, any information he would have revealed would have been incriminating. *See id.* at 309.

**E.**

Lastly, Early "explicitly request[s] from this Court a rule of law that prohibits the DOC from mandating offenders for treatment while the individual's case is on direct appeal." Early appears to argue that this court should issue an opinion that would prohibit the commissioner from requiring an inmate to participate in a treatment program, or from imposing a penalty on an inmate who refuses to participate in a treatment program, in every case in which an inmate has not yet exhausted the right to pursue a direct appeal. Early contends that such a prohibition would be beneficial because it would avoid the situation in which an inmate is unaware of his Fifth Amendment right against self-incrimination, or is uncertain whether participation will implicate the conduct of his criminal offense, or is discouraged from appealing a conviction.

13

We do not accept Early's invitation to address issues that go beyond the facts of this case. The broad relief he seeks would be inconsistent with our caselaw, which states that there is no "authority that permits a district court to grant general declaratory or injunctive relief in a habeas proceeding." *Rud v. Fabian*, 743 N.W.2d 295, 304 (Minn. App. 2007), *review denied* (Minn. Mar. 26, 2008). In addition, the supreme court's caselaw on this subject clearly establishes that a habeas claim such as Early's must be analyzed based on its particular facts. *See Johnson*, 735 N.W.2d at 300-11. We must assume that the existing caselaw is adequate to protect the Fifth Amendment rights of persons who are required to participate in the commissioner's rehabilitative programs.

In sum, the district court did not err by denying Early's petition for a writ of habeas corpus.

**Affirmed.**