In the Matter of Charles
Richard STONE.

No. C7–85–1567.

Court of Appeals of Minnesota.

Nov. 12, 1985.

John Myron Lund, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Douglas McClellan, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

While appellant was incarcerated at Lino Lakes Correctional Facility after conviction

of criminal sexual conduct, a petition was brought for his commitment as a psychopathic personality. After a hearing, appellant was committed to the Minnesota Security Hospital as a psychopathic personality. We affirm.

## FACTS

Stone, age 23, is a diagnosed pedophiliac who has admitted molesting between 30 and 200 young girls. After his release from Leavenworth Federal Penitentiary in 1982, he pleaded guilty to charges of criminal sexual misconduct in 1983. While incarcerated at Lino Lakes, Stone participated in a treatment program for sex offenders.

Psychiatrist Sharon Satterfield examined Stone in late July 1985. She testified that appellant had made only minimal progress, that he disclosed he still had sexual urges towards young girls, and that he became aroused by looking at pictures of them. Satterfield diagnosed Stone as a pedophiliac suffering from a mixed personality disorder. Stone has features of both an antisocial and a passive-aggressive personality. Satterfield classified pedophilia as a behavioral disorder, rather than a major psychiatric disorder. She believed Stone lacked insight into his behavior and minimized the effects of abuse on his victims.

Psychologist Nancy Steele is the director of the sex offender treatment program which appellant participated in at Lino Lakes. She agreed with the diagnosis of pedophilia, and also described pedophilia as a behavioral disorder. In June and July of 1985, Steele obtained permission to search Stone's room at Lino Lakes. Many letters to and from children were found, together with catalog pictures of children in bathing suits or underwear. Stone wrote to another inmate, seeking pictures and phone numbers of young girls. Stone saved correspondence with Stewart Knowlton, a convicted killer of a young girl. Steele testified Stone remained dangerous and needed much more treatment in a secure environment.

A friend of Stone, Richard Robinson, testified that Stone wrote to him, asking him to photograph Robinson's six and seven year old nieces. Stone also sent model's consent forms for Robinson's use. Robinson refused to take the requested pictures.

Timothy O'Brien, intake director at Alpha Human Services, a residential treatment facility, testified they would accept Stone only if he was committed for a minimum duration of 18 to 24 months. O'Brien told the court the average stay at Alpha House is 22 months, followed by five months of follow-up treatment. Less than six of 10 clients entering the program complete treatment. About two of every 10 escape or abscond. Alpha House is not a locked facility and the majority of the clients who have absconded left at night.

The trial court found Stone is a pedophiliac and there is a substantial likelihood he will attempt to molest other young girls in the future. The court found there was no alternative to commitment and rejected placement alternatives less restrictive than the security hospital. The court rejected Alpha House because there was no current vacancy and because security is insufficient to prevent escape.

## ISSUES

1. Was appellant deprived of proper notice of the commitment hearing?

2. Did the trial court err by admitting correspondence, found in appellant's room, between appellant and the convicted killer of a young girl?

3. Is the determination that appellant is a psychopathic personality supported by the evidence?

4. Did the trial court err by rejecting Alpha House as a less restrictive alternative?

## ANALYSIS

█ 1. Pursuant to Minn.Stat. § 253B.08, subd. 2 (1984), the proposed patient, his counsel, and the petitioner must be given at least five days' notice that a hearing will be held and at least two days'

notice of the time and date of the hearing. By order on July 24, the trial court notified the parties the commitment hearing would be held on July 30. Counsel were informed the trial judge was involved in a civil trial and the commitment hearing would begin after the trial was completed.

Appellant claims he was denied the requisite notice because the hearing actually began at 3:45 p.m. on July 31. Counsel was notified on the morning of July 31 the commitment hearing would likely begin that afternoon. When the hearing began, appellant's counsel moved for a continuance for lack of adequate notice. The trial court denied the motion, finding counsel had adequate notice that the pending civil matter could delay the commitment hearing.

We note the commitment hearing was not held earlier than counsel had been advised and no witness subpoenaed by appellant was prevented from testifying because of the one-day delay. We agree with the trial court that appellant was not deprived of, the statutorily required notice.

2. The trial court admitted into evidence one and one-half to two year old correspondence discovered in appellant's room at Lino Lakes. Appellant objected to introduction of this correspondence, arguing that the search of his room was unconstitutional and that the correspondence was remote in time.

The trial court admitted the correspondence to show a pattern of thought and conduct conditioned on respondent's counsel connecting it to ongoing behavior. At the close of trial, appellant renewed his objection, arguing the correspondence had not been so connected. The trial court took that objection under advisement and did not explicitly rule on it in the commitment order.

It is unclear to what extent the trial court was influenced by the correspondence, in light of its comment regarding the age of the evidence. At any rate, the trial court also received recent correspondence from Stone to another inmate and to a nine year old girl, and heard about Stone's letter to his friend Robinson, requesting photographs of girls aged three to thirteen. The objected to correspondence merely completed a picture of appellant's behavior and provided context and meaning to the central issue of appellant's mental condition. *See State v. Gonzales-Guerrero,* 364 N.W.2d 792, 794 (Minn.1985).

■ In addition to appellant's objection to relevance, appellant argued the search which yielded the evidence was unconstitutional. The search was conducted at the request of Stone's psychologist, with the approval of the administrator of Lino Lakes Correctional Facility, and while Stone was serving a criminal sentence. Appellant had no reasonable expectation of privacy in his prison room as "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer,* — U.S. —, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). The search in this case was apparently motivated by concern that appellant was corresponding with children and soliciting further contact. Appellant's regression in therapy indicated he was, once again, becoming emotionally fixated upon children. The search was not improper.

■ 3. Appellant argues the evidence was insufficient to support a finding of psychopathic personality and that he should have been committed as a mentally ill person. Minn.Stat. § 526.09 (1984) defines "psychopathic personality" as

the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons.

A mentally ill person suffers from a substantial psychiatric disorder which grossly impairs judgment, behavior, recognition of reality, or reasoning, and is manifested by

instances of grossly disturbed behavior or faulty perception. Minn.Stat. § 253B.02, subd. 13.

Three experts testified about appellant's mental condition. Psychiatrist Satterfield testified appellant had a behavioral disorder, not a major psychiatric disorder. She found Stone emotionally unstable and lacking in good judgment. In fact, during Satterfield's interview and examination of Stone, Stone became so angry that Satterfield feared he might hurt her. Stone also reported he felt unable to control impulsive behavior and he did not understand the effects of abuse on his victims. Satterfield concluded Stone was irresponsible for his conduct in sexual matters and very dangerous to others.

Psychologist Steele explained that pedophilia differed from a substantial psychiatric disorder because pedophilia is not marked by a serious break with reality. Steele felt Stone was emotionally unstable, behaved impulsively, lacked good judgment, and failed to appreciate the consequences of his actions. When Steele asked appellant if he had ever sexually abused boys, he said he had not. He also told Satterfield that he would never abuse a boy, because he had twice been abused as a child and would never inflict the same trauma on a boy. Stone had only recently begun to realize the feelings of female victims might be similar.

Steele witnessed an example of appellant's impulsive behavior on June 26. When confronted with the letters and pictures found in his room and told his telephone privileges would be restricted, Stone "blew up, shoved what was probably a 70 pound table five feet across the room, slammed it against the wall, stormed out of the room and slammed the door [in a] complete rage." Stone also expressed concern about attending a picnic, for fear of what he might do to any children present, and worried about what he might do if placed in the community.

The court-appointed examiner, psychologist Owen Nelson, testified neither pedophilia nor mixed personality disorder was a major mental illness. He found appellant emotionally unstable and his behavior impulsive. He told the court Stone lacked standards of good judgment and was seriously deficient in his understanding of the consequences of his abusive actions. Nelson agreed Stone posed a high risk of harm to others.

In light of the overwhelming evidence that appellant has a psychopathic personality, and not a substantial psychiatric disorder, we reject appellant's contention that this commitment was improper.

■ 4. The trial court rejected Alpha House Treatment Facility and ordered appellant committed to the Security Hospital. Dr. Satterfield testified Alpha House was not secure enough and questioned whether the treatment program was thorough enough. Steele believed appellant required long-term treatment in a confined setting before he began a gradual readjustment to the community.

Appellant's parole officer, Philip King, was aware that Alpha House would accept appellant when they had a vacancy, provided he was committed for more than two years. King testified Alpha House had an excellent reputation among parole officers.

Timothy O'Brien, the intake director of Alpha House, confirmed that appellant would be accpeted into their program, if he was committed for a minimum of 18 to 24 months. O'Brien testified the facility was unlocked and that only 58 percent of the entering clients complete treatment. The remainder are either terminated for failure to progress or they abscond.

The trial court rejected Alpha House because it could not provide sufficient security to prevent appellant from leaving and molesting another child. Appellant has not demonstrated the trial court erred by rejecting community placement in favor of commitment to the Minnesota Security Hospital.

## DECISION

Appellant was properly committed as a psychopathic personality.

Affirmed.