**Shah Quran Ehassan AZIZ, petitioner, Appellant,**

v.

**Joan FABIAN, Commissioner of Corrections, Respondent.**

**No. A10–1121.**

Court of Appeals of Minnesota.

Dec. 14, 2010.

---

Bradford W. Colbert, Jason Schellack (certified student attorney), Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by TOUSSAINT, Presiding Judge; HALBROOKS, Judge; and STONEBURNER, Judge.

## OPINION

TOUSSAINT, Judge.

This appeal is from an order denying appellant Shah Quran Ehassan Aziz's petition for a writ of habeas corpus challenging the use by the Minnesota Department of Corrections (DOC) of the "some evidence" standard in disciplinary hearings in 2002 and 2004 that resulted in the imposition of 15 additional days of incarceration. We affirm.

## FACTS

A disciplinary hearing was held in December 2002 on a charge that appellant violated prison rules by saving a legal document on a hard drive where it was accessible to other inmates. The hearing officer did not state what standard of proof was being applied but found that appellant committed the charged violation. Appellant was ordered to serve 30 days in segregation, with one day of extended incarceration for every three days of segregation, and to pay restitution.

In January 2004, appellant was disciplined for possessing an unauthorized book and failing to return it to the library from which it was borrowed. The hearing officer stated that the "some evidence" standard was being applied in finding a violation. Appellant was ordered to serve 60 days in segregation and to pay restitution.

In December 2009, appellant filed a petition for a writ of habeas corpus, arguing that, because the use of the "some evi-

dence" standard violated due process under the ruling announced in *Carrillo,* 701 N.W.2d at 777, he was entitled to have vacated the extended incarceration time imposed based on the disciplinary findings. The district court denied the petition, concluding that *Carrillo* did not apply retroactively to appellant's 2002 and 2004 disciplinary hearings.

## ISSUE

Is appellant entitled to relief from disciplinary sanctions imposed on him in 2002 and 2004 based on the "some evidence" standard?

## ANALYSIS

■ The district court's findings in support of a denial of a petition for a writ of habeas corpus are entitled to great weight and will be upheld if reasonably supported by the evidence. *Northwest v. LaFleur,* 583 N.W.2d 589, 591 (Minn.App.1998), *review denied* (Minn. Nov. 17, 1998). Questions of law, however, are reviewed de novo. *State ex rel. Guth v. Fabian,* 716 N.W.2d 23, 26 (Minn.App.2006), *review denied* (Minn. Aug. 15, 2006). The retroactivity of a judicial decision is a question of law. *Erickson v. State,* 702 N.W.2d 892, 896 (Minn.App.2005).

In *Carrillo,* the supreme court concluded "that the 'some evidence' standard is inappropriate for use by the DOC at the fact-finding level." 701 N.W.2d at 777. The court also concluded "that the preponderance of the evidence standard better protects against an erroneous deprivation of an inmate's liberty interest in his supervised-release date." *Id.* The *Carrillo* court applied a three-factor test for determining whether "a standard of proof in a particular type of proceeding satisfies due process." *Id.* at 776. Thus, the court implicitly held that the "some evidence"

standard, when used by the DOC at the fact-finding level, violates due process.

Respondent Joan Fabian, Commissioner of Corrections, concedes that the DOC's hearing officers applied the "some evidence" standard in the 2002 and 2004 disciplinary hearings. The hearing officer in 2004 explicitly stated a reliance on that standard, and the 2002 hearing officer's findings do not apply a higher standard. Thus, the issue in this appeal is whether *Carrillo*'s 2005 holding that the "some evidence" standard violates due process applies retroactively to appellant's 2002 and 2004 disciplinary-hearing findings.

The district court ruled that *Carrillo* was not retroactively applicable to appellant's disciplinary hearings. The court distinguished the applicable standard of proof at a criminal trial, as to which a new rule must be retroactively applied, from the standard at an inmate's disciplinary hearing. *See Ivan V. v. City of New York,* 407 U.S. 203, 205, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659 (1972) (holding that criminal standard of proof beyond reasonable doubt applied retroactively). The district court did not identify a standard for retroactive application in the inmate disciplinary-hearing context.

■ Appellant argues that, because a question of state law is involved, the court should apply the Minnesota rule that, "absent special circumstances or specific pronouncements by the overruling court," a decision should be given retroactive effect. *See Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982) (applying three-factor test from *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to retroactive application of United States Supreme Court civil-jurisdiction decision). We agree that the *Chevron Oil* test used in *Hoff* applies. Respondent appears to rely on the retroactivity standard established in *Teague v. Lane,* 489 U.S. 288, 310, 109

S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). But the *Teague* standard applies to "new constitutional rules of criminal procedure." *Id.* Inmate disciplinary hearings are not criminal proceedings, and the proper evidentiary standard for them is not a matter of criminal procedure. *See State v. McKenzie,* 542 N.W.2d 616, 620 (Minn. 1996) (holding that prison disciplinary proceedings are not punitive and therefore are not subject to the double-jeopardy prohibition).

The three-factor *Chevron Oil* test used in *Hoff* to decide the retroactivity issue in that case provides as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law.... Second, ... [the court looks to] the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, [it weighs] the inequity imposed by retroactive application....

*Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355 (quotation and citation omitted), *quoted in Hoff,* 317 N.W.2d at 363.

■ Respondent agrees that *Carrillo* established a "new principle of law." The fact that *Carrillo* established a "new principle of law" weighs in favor of denying it retroactive application under the *Chevron Oil* test in that otherwise the general rule favoring retroactive application would apply. *See Bendorf v. Comm'r of Pub. Safety,* 727 N.W.2d 410, 414 (Minn.2007) (holding that, because decision did not establish "new principle of law," it would be applied retroactively without regard to other *Chevron Oil* factors).

The second *Chevron Oil* factor looks to the history, the purpose, and the likely effect of retroactive application of the rule in question. *Hoff,* 317 N.W.2d at 363. Respondent interprets the rule in question here as being the use of habeas corpus for collateral review. Appellant does not address the second *Chevron Oil* factor or identify what the rule is for purposes of analyzing that factor. We note that the second *Chevron Oil* factor on the "new principle of law," not on a procedural mechanism such as the use of habeas corpus for collateral review, is only a way in which the new rule may be applied.

The "new principle of law" established by *Carrillo* is that the "some evidence" standard violates due process in the prison-disciplinary context. As the supreme court stated in *Carrillo:*

> The purpose of a standard of proof for a particular type of adjudication is to instruct the fact finder on the degree of confidence our society desires the fact finder to have in the correctness of his or her conclusions. The standard of proof serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

701 N.W.2d at 773–74 (citation and quotation omitted).

The United States Supreme Court in *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), approved the use of the "some evidence" standard by a prison disciplinary board. The Eighth Circuit later held that use of the "some evidence" standard at the prison-disciplinary fact-finding level did not violate due process. *Goff v. Dailey,* 991 F.2d 1437, 1441–42 (8th Cir.1993). The *Carrillo* court, however, followed the "prevailing view" that the "some evidence" standard is suitable only for use at an appellate level. 701 N.W.2d at 775–76.

This history suggests that the DOC instituted the "some evidence" standard at the fact-finding level in reliance on court decisions approving the standard. Indeed,

our supreme court had held that a prisoner had only a conditional liberty interest in his supervised-release date. *State ex rel. Morrow v. LaFleur,* 590 N.W.2d 787, 793 (Minn.1999). Although this holding was subsequently overruled, in part by *Carrillo,* at the time of appellant's disciplinary hearings it was relevant to determining the process due an inmate being sanctioned by an extension of his incarceration time. *See Johnson v. Fabian,* 735 N.W.2d 295, 304 (Minn.2007) (holding that *Carrillo* and *McKune v. Lile,* 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), combined to overrule *Morrow* ). Thus, the history of the standard of proof governing prison disciplinary proceedings favors the nonretroactive application of *Carrillo.*

Retroactive application of *Carrillo* would certainly serve the purpose of increased accuracy in prison disciplinary decisions as to the decisions made in the pre-*Carrillo* era, which weighs in favor of retroactive application. The *Carrillo* court noted that use of the "some evidence" standard sent a message to the inmate population as well as to society that an inmate is presumed guilty of a disciplinary offense. 701 N.W.2d at 777. But *Carrillo* has itself corrected this erroneous message, and retroactive application would not contribute significantly to fulfilling that purpose.

As to the likely effect of retroactive application, in many cases it would be difficult to reconstruct the disciplinary record after a lengthy period of time. Some erroneous deprivations of liberty, in the form of added prison time, might be rectified. But many of the inmates whose disciplinary hearings were conducted under the "some evidence" standard have been released from prison in the five years since *Carrillo.* Supervised release dates for the inmates still in prison could be corrected,

but it would impose a significant burden on the DOC to reconstruct the records in those cases and to hold the necessary rehearings. Other significant disciplinary sanctions, including confinement in segregation and denial of privileges, occur immediately after the hearing and could no longer be remedied by retroactive application of *Carrillo.* *See* DOC Policy Manual § 303.010 (defining minor penalty as loss of privileges, segregation, or restitution), .010.H.1 (providing that hearing officer may impose "any or a combination of penalties and/or restitution"). Thus, applying *Carrillo* retroactively could correct some erroneous disciplinary findings but often without providing an effective remedy and at the cost of invalidating findings supported by considerable evidence that cannot presently be reconstructed.

We note that prisons are controlled environments, with surveillance of various types a constant reality. *See generally State v. Pietraszewski,* 283 N.W.2d 887, 891 (Minn.1979) (holding prison search can be conducted without warrant and without probable cause when it is necessary to maintain security); *In re Stone,* 376 N.W.2d 511, 513 (Minn.App.1985) (holding that prison inmate had no reasonable expectation of privacy in his cell). It is doubtful that evidence of offenses committed within prison walls is as sparse or difficult to acquire as evidence of offenses committed on the street. Therefore, although the higher preponderance-of-the-evidence standard mandated by *Carrillo* provides some legal assurance of greater accuracy in prison fact-finding, the likely practical effect of a retroactive application of *Carrillo* may be less significant. Given the greater ease of gathering evidence in prison, the evidence presented in the pre-*Carrillo* disciplinary hearings may have often exceeded what was required by the

lesser "some evidence" standard.[1] Thus, retroactive application of *Carrillo* would not have as great a practical impact on the accuracy of prior disciplinary decisions as it might appear.

We recognize that a rule increasing the accuracy of fact-finding in a criminal trial would be applied retroactively despite "severe impact on the administration of justice." *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971). But a criminal conviction has far-reaching collateral consequences. *See Morrissey v. State*, 286 Minn. 14, 16, 174 N.W.2d 131, 133 (1970) (noting collateral consequences that attach to criminal conviction because of its stigma). By contrast, prison disciplinary sanctions are remedial. *McKenzie*, 542 N.W.2d at 619–20. Moreover, the United States Supreme Court made its decisions expanding the due process required in both prison disciplinary proceedings and parole revocations prospective only. *Wolff v. McDonnell*, 418 U.S. 539, 573–74, 94 S.Ct. 2963, 2983, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 490, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

The third *Chevron Oil* factor "requires a weighing of the equities involved in a retroactive application" of *Carrillo. See Hoff*, 317 N.W.2d at 364. The concern expressed in *Carrillo* about the "risk of erroneous deprivation" weighs in favor of retroactive application. But the United States Supreme Court, addressing the retroactive application of new due process standards for prison disciplinary hearings in *Wolff*, 418 U.S. at 574, 94 S.Ct. at 2983, recognized "the significant impact a retroactivity ruling would have on the adminis-

tration of ... prisons." This weighs strongly against retroactive application. *Cf. State ex rel. Kost v. Erickson*, 353 N.W.2d 237, 240 (Minn.App.1984) (recognizing legislature's reliance on "administrative difficulties in recalculating the sentences" of many inmates in its decision not to make good-time provisions retroactive).[2]

In summary, although the additional prison time imposed based on the "some evidence" standard could still be remedied by retroactive application of *Carrillo*, the benefit of retroactive application is outweighed by the burden on the DOC of reopening large numbers of disciplinary files. We conclude that retroactive application would not significantly serve *Carrillo*'s purposes when compared with the burden it would impose on prison administration.

## DECISION

The *Carrillo* decision invalidating use of the "some evidence" standard in prison disciplinary fact-finding hearings does not apply retroactively to appellant's 2002 and 2004 hearings. The district court therefore did not err in denying appellant's habeas petition.

**Affirmed.**

---

1. This may be illustrated by the findings from appellant's 2002 disciplinary hearing, which do not specify what standard of proof was applied.

2. The parties dispute the length of time during which the DOC employed the "some evidence" standard. But we need not resolve that issue in order to conclude that the burden of retroactive application of *Carrillo* on prison administration would be significant.