*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0381**

Eric Matthew Hopper, petitioner,
Appellant,

vs.

Tom Roy, Minnesota Commissioner of Corrections,
Respondent.

**Filed October 17, 2016
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Hennepin County District Court
File No. 27-CV-15-19022

Eric Matthew Hopper, Minneapolis, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Kelly S. Kemp, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

In this habeas appeal, Eric Hopper challenges his intensive-supervised-release conditions on ex post facto and reasonableness grounds. We affirm in part, reverse in part, and remand to the district court for further proceedings.

**FACTS**

In 2006, Eric Hopper pleaded guilty to first-degree criminal sexual conduct after his half-sister reported that he had sexually assaulted her between 1986 and 1989. The district court sentenced Hopper to 43 months in prison but stayed execution of the sentence and placed him on probation for ten years. While on probation, Hopper was convicted of felony commercial sex abuse of a minor in Washington State. The district court revoked Hopper's probation and executed his sentence. In September 2015, the Minnesota Commissioner of Corrections placed Hopper on intensive supervised release. Among other things, the conditions of Hopper's release require that he "refrain from the use or possession of intoxicants and must not use or possess narcotics, alcohol, or other drugs," submit to urinalyses, and not "own or operate any device that allows for Internet capabilities" without prior approval from his supervising agent.

Hopper petitioned for a writ of habeas corpus, arguing that his placement on intensive supervised release and his Internet-use condition constitute ex post facto punishment and that his release conditions are unreasonable. The district court denied the petition without an evidentiary hearing.

Hopper appeals.

**D E C I S I O N**

A writ of habeas corpus is a statutory civil remedy available "to obtain relief from [unlawful] imprisonment or restraint." Minn. Stat. § 589.01 (2014). "A writ of habeas corpus may also be used to raise claims involving fundamental constitutional rights and significant restraints on a defendant's liberty or to challenge the conditions of

2

confinement." *State ex rel. Guth v. Fabian*, 716 N.W.2d 23, 26–27 (Minn. App. 2006), *review denied* (Minn. Aug. 15, 2006). The petitioner bears the burden of showing the illegality of his detention or restraint. *See Breeding v. Swenson*, 240 Minn. 93, 97, 60 N.W.2d 4, 7 (1953). "The district court's findings in support of a denial of a petition for a writ of habeas corpus are entitled to great weight and will be upheld if reasonably supported by the evidence." *Aziz v. Fabian*, 791 N.W.2d 567, 569 (Minn. App. 2010). But we review questions of law de novo. *Id.*

Minnesota law generally requires inmates to "serve a supervised release term upon completion of the inmate's term of imprisonment." Minn. Stat. § 244.05, subd. 1 (2014). While on release, the "inmate is and remains in the legal custody and under the control of the commissioner, subject at any time to be returned to a facility of the Department of Corrections . . . and the parole rescinded by the commissioner." Minn. Stat. § 243.05, subd. 1(b) (2014). An inmate may also be placed on "intensive supervised release for all or part of the inmate's supervised release or parole term if the commissioner determines that the action will further the goals described in section 244.14, subdivision 1, clauses (2), (3), and (4)." Minn. Stat. § 244.05, subd. 6(a) (2014). One of these goals is to "protect the safety of the public." Minn. Stat. § 244.14, subd. 1(2) (2014). For persons on intensive supervised release, the commissioner has the authority to "impose appropriate conditions of release on the inmate including but not limited to unannounced searches of the inmate's person, vehicle, premises, computer, or other electronic devices capable of accessing the Internet . . . [and] random drug testing." Minn. Stat. § 244.05, subd. 6(b) (2014).

3

**I**

Hopper argues that his Internet restriction and the commissioner's decision to place him on intensive supervised release constitute ex post facto punishment. The United States and Minnesota Constitutions both prohibit the imposition of ex post facto laws. U.S. Const., art. I, § 10; Minn. Const. art. I, § 11. The prohibition is meant to "assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict[] governmental power by restraining arbitrary and potentially vindictive legislation." *Carmell v. Texas*, 529 U.S. 513, 566, 120 S. Ct. 1620, 1650 (2000) (quotations omitted). "To qualify as an ex post facto law, a statute must be a criminal or penal law, it must not be merely procedural, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Rew v. Bergstrom*, 845 N.W.2d 764, 790 (Minn. 2014) (quotations omitted). A law may work to a defendant's disadvantage:

> (1) by punishing as a crime an act previously committed, which was innocent when done, (2) by making more burdensome the punishment for a crime, after its commission, or (3) by depriving one charged with [a] crime of any defense available according to law at the time when the act was committed.

*Hankerson v. State*, 723 N.W.2d 232, 241 (Minn. 2006) (quotations omitted).

Hopper first asserts that the Internet restriction imposed on him violates the ex post facto prohibition because Minnesota Statutes section 243.055 (2014), which specifically addresses computer and Internet restrictions for persons on supervised release, was not enacted until after he committed his offense. Section 243.055 allows the commissioner of corrections to "prohibit [an] individual [on supervised release] from possessing or using a

4

computer with access to an Internet service or online service without . . . prior written approval" when "the commissioner believes a significant risk exists that . . . [the] individual . . . may use an Internet service or online service to engage in criminal activity or to associate with individuals who are likely to encourage the individual to engage in criminal activity." Minn. Stat. § 243.055, subd. 1(1). The statute has remained unchanged since its enactment in 1997. *See* 1997 Minn. Laws ch. 239 art. 9, § 18, at 2877–78.

Although Hopper is correct that section 243.055 did not exist when he committed his offense, the statute is not an ex post facto law because it does not work to his disadvantage. At the time Hopper committed his offense, the commissioner of corrections had broad authority to create and administer supervised-release conditions. *See* Minn. Stat. § 244.05, subds. 2–3 (1984). The commissioner had the power "[t]o determine the place of confinement of committed persons in a correctional facility . . . and to prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or outside the facility." Minn. Stat. § 241.01, subd. 3a(b) (1984). At the time that Hopper committed his offense, the commissioner therefore could have compelled Hopper to follow supervised-release conditions consistent with those imposed here.

In support of his argument that the commissioner lacked the authority to impose release conditions restricting his Internet use, Hopper cites *Rud v. Fabian*, 743 N.W.2d 295 (Minn. App. 2007), *review denied* (Minn. Mar. 26, 2008). Rud was imprisoned in 1985, and the commissioner sanctioned him for refusing to participate in a rehabilitative sex-offender program in 2003. 743 N.W.2d at 296–97. This court held that the sanction violated the ex post facto prohibition because at the time of Rud's sentencing the commissioner

5

lacked the authority to compel participation in rehabilitative programs or impose sanctions for failure to do so. *Id.* at 297, 300–01. *Rud* is distinguishable from Hopper's situation. In concluding that the commissioner lacked the authority to compel Rud to attend sex-offender treatment, this court determined that the specific language of Minnesota Statutes section 244.03 (1984), which made participation in mental health programs voluntary, controlled over the commissioner's general authority in section 241.01, subdivision 3a(b) (1984). *Id.* at 301. No statutory provision existing at the time of Hopper's offense can similarly be interpreted as a limitation on the commissioner's general authority to impose release conditions like the Internet restriction here. The commissioner's determination that Hopper should be subject to restrictive Internet conditions therefore does not constitute ex post facto punishment.

Hopper also argues that the commissioner's decision to place him on intensive supervised release (apparently as contrasted with normal supervised release) constituted ex post facto punishment because the statute specifically providing for intensive supervised release was not enacted until 1990. *See* Minn. Stat. §§ 244.05, subd. 6, .14–.15 (1990) (codifying intensive supervised release). This argument is unconvincing for the same reason as his Internet-condition challenge. At the time Hopper committed his offense, the commissioner had broad authority to prescribe conditions for supervised release. *See* Minn. Stat. § 241.01, subd. 3a(b) (1984). The commissioner could have required Hopper to comply with release conditions consistent with those that are now specifically addressed in section 244.05, subdivision 6(b). The intensive-supervised-release statute is therefore no more onerous than the law already in effect when he committed his offense. *See Rew*, 845

6

N.W.2d at 790 (stating that an ex post facto law is one that "render[s] an act punishable in a manner in which it was not punishable when it was committed." (quotation omitted)). Because we conclude that Hopper was not disadvantaged by any retroactively applied law, we do not address the district court's alternative holding that the intensive-supervised-release conditions do not constitute ex post facto punishment because the conditions are nonpunitive. *See id.* at 790–91 (applying a two-step test to determine whether a law is criminal or penal).

## II

Hopper argues that his alcohol and Internet-use conditions are not reasonably related to the nature of his offense. In the analogous context of conditional release, the supreme court has reviewed release conditions to determine whether they are "reasonably related to the offense and [do] not unduly restrict the [parolee's] liberty." *State v. Schwartz*, 628 N.W.2d 134, 141 (Minn. 2001). The district court applied this standard to assess the conditions of Hopper's supervised release. Additionally, when an agency makes a decision that is within its area of expertise, its decision "enjoy[s] a presumption of correctness." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001).

## A

The condition that Hopper refrain from using alcohol is a standard requirement for persons on supervised release. *See* Minn. R. 2940.2000, subp. 6 (2015) ("Releasees . . . shall not possess or use narcotics or other drugs, preparations, or substances as defined by Minnesota Statutes, chapter 152 . . . ."); *see also Morrissey v.*

7

*Brewer*, 408 U.S. 471, 478, 92 S. Ct. 2593, 2598 (1972) (noting that parolees are typically "forbidden to use liquor"). The condition is reasonable because allowing a person to consume alcohol while on supervised release could result in his impaired judgment and increase the likelihood of re-offense. *See* Minn. R. 2940.1900 (2015) ("Conditions of . . . supervised release shall be based on the need for public safety."). With respect to the alcohol condition, Hopper is particularly concerned about what he believes is a restriction on his ability to visit establishments where alcohol is served. But our review of the record informs us that no such condition actually was imposed. Instead, under the standard conditions of Hopper's release, he must "refrain from the use or possession of intoxicants and must not use or possess narcotics, alcohol, or other drugs." Hopper claims that "[t]he DOC interprets its alcohol restriction very broadly, and visiting any establishment in which the serving of alcohol is a primary activity is considered a violation of this restriction." But he does not provide any evidence supporting the assertion. Because he has the burden to show that his restraint is unlawful, *see Breeding*, 240 Minn. at 97, 60 N.W.2d at 7, and he has failed to demonstrate that the condition exists, his challenge to that aspect of the alcohol restriction fails.

**B**

Hopper relatedly challenges the condition that he submit to urinalyses. The legislature has specifically authorized the commissioner to impose a condition for "random drug testing" when appropriate. Minn. Stat. § 244.05, subd. 6(b). Hopper argues that the condition is not appropriate because it was imposed merely to humiliate or harass him. But he provides no evidence supporting that contention. And the urinalysis condition is

8

reasonable because it allows the commissioner to confirm that Hopper is complying with the controlled-substance restriction.

## C

Hopper next asserts that his Internet restriction is unreasonable because it effectively bars him from his chosen occupation as a software developer.[1] In upholding the restriction, the district court noted that Hopper had "preyed on a minor" and cited *United States v. Muhlenbruch* in support of its conclusion that the ban was appropriate. 682 F.3d 1096 (8th Cir. 2012). In *Muhlenbruch*, the Eighth Circuit affirmed the imposition of a supervised-release condition barring the offender from possessing a computer or accessing the Internet without prior approval from a probation officer. *See id.* at 1104–06. Hopper maintains that *Muhlenbruch* is distinguishable because the offender in that case used his computer to possess child pornography, a crime Hopper has not been accused of committing.

Hopper's argument has merit. Unlike the child-pornography offense in *Muhlenbruch*, no clear relationship exists between Hopper's crimes and his Internet restriction. Nothing in the record indicates that Hopper used computers or the Internet in the commission of his offenses. Although no Minnesota caselaw is on point, federal appellate courts have been reluctant to uphold complete bans on computer or Internet use, including when the offender was convicted of possessing child pornography. *See, e.g.*, *United States v. Wiedower*, 634 F.3d 490, 495 (8th Cir. 2011) (reversing restriction

---

[1] Although the condition allows Hopper to use Internet devices with the approval of his supervising agent, the record does not indicate whether he ever requested permission to use computers or the Internet for employment purposes.

9

prohibiting offender from using any computer without prior consent when offender "simply used his computer to receive and possess child pornography"); *United States v. Sofsky*, 287 F.3d 122, 126–27 (2d Cir. 2002) (vacating Internet prohibition when defendant pleaded guilty to only receiving child pornography); *United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001) (finding ban on all computer and Internet use to be "greater than necessary" to serve the goals of supervised release when defendant had been convicted only of possession of child pornography). But Internet restrictions have been upheld when the defendant sold, transferred, or produced pornographic images or used the Internet to arrange sexual relations with minors. *United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009).

The state argues that these cases are inapposite because they are based on federal statutory law that has no application to parolees serving Minnesota-imposed sentences.[2] But even solely applying Minnesota law, the district court inadequately considered the effect the almost complete ban on Internet use would have on Hopper. Minnesota Statutes section 243.055, subdivision 3, requires that, "In imposing restrictions, the commissioner shall take into account that computers are used for numerous, legitimate purposes and that,

---

[2] Federal district courts are afforded wide discretion to impose release conditions consistent with 18 U.S.C. § 3583(d) (2012). *Muhlenbruch*, 682 F.3d at 1102. Release conditions must be reasonably related to "(1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the deterrence of criminal conduct; (4) the protection of the public from further crimes of the defendant; and (5) the defendant's educational, vocational, medicinal, or other correctional needs." *Id.* The conditions also may not "involve a 'greater deprivation of liberty than is reasonably necessary' to achieve such purposes." *Id.* at 1102–03 (quoting 18 U.S.C. § 3583(d)(2)).

10

in imposing restrictions, the least restrictive condition appropriate to the individual shall be used." Hopper cited this statute in his habeas petition. But despite the relevance of subdivision 3 to Hopper's petition, the district court did not analyze whether the Internet condition was indeed the least restrictive condition appropriate. Nor did the district court mention in its analysis the necessity of computers to Hopper's occupation or the fact that his offenses do not appear to be Internet-related. Because the district court did not address section 243.055's requirement that any computer or Internet restriction be the "least restrictive condition appropriate to [Hopper]," we reverse and remand to the district court for further consideration of the condition in light of the statutory language.

Hopper argues that the district court erred by dismissing his habeas petition without an evidentiary hearing. The district court determined that no hearing was necessary because Hopper failed to allege sufficient facts demonstrating a prima facie case for relief. *See Case v. Pung*, 413 N.W.2d 261, 263 (Minn. App. 1987), *review denied* (Minn. Nov. 24, 1987). Because Hopper did not present a prima facie case for relief on his ex post facto claims or his challenge to his alcohol conditions, the district court did not err by summarily denying those parts of his petition. On remand, the district court should consider whether an evidentiary hearing is necessary to assess Hopper's challenge to the Internet condition.

**Affirmed in part, reversed in part, and remanded.**